**Frank D. FRAZER, Petitioner–Appellee,**

v.

**State of SOUTH CAROLINA; Henry Dargan McMaster, Attorney General for South Carolina, Respondents–Appellants.**

No. 04–6500.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 2004.

Decided Dec. 8, 2005.

---

which Judge DIANA GRIBBON MOTZ joined. Judge DIANA GRIBBON MOTZ, wrote a separate concurring opinion. Judge LUTTIG wrote a dissenting opinion.

## OPINION

DUNCAN, Circuit Judge.

South Carolina appeals the district court's order granting relief on Frank Frazer's petition for a writ of habeas corpus. The court granted relief solely as to Frazer's claim that his attorney failed to consult with him regarding a direct appeal following his sentencing on state trafficking charges in 1994, and that as a result he lost his right to appeal. Although the state courts that reviewed this claim concluded that the Sixth Amendment did not require Frazer's counsel to consult with him regarding an appeal, the district court found this conclusion was unreasonable under *Strickland v. Washington,* 464 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny. For the following reasons, we affirm.

**ARGUED:** William Edgar Salter, III, Senior Assistant Attorney General, Office of the Attorney General of South Carolina, Columbia, South Carolina, for Appellants. David Bruce Betts, Columbia, South Carolina, for Appellee. **ON BRIEF:** Henry Dargan McMaster, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Columbia, South Carolina, for Appellants.

Before LUTTIG, MOTZ, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge DUNCAN wrote the majority opinion, in

## I.

In March 1994, a South Carolina grand jury indicted Frazer for trafficking, possessing a weapon during the commission of a crime of violence, and possessing a controlled substance with intent to distribute. At a change of plea and sentencing hearing on March 22, 1994, Frazer pleaded guilty to the first two charges. It is undisputed that Frazer and the state assumed that the trial judge would apply concurrent five-year sentences. However, the court imposed consecutive five-year sentences and a fine of $100,000, despite the fact that the maximum fine for Frazer's convictions was $25,000. As Jack Howle, Frazer's counsel, subsequently acknowledged, Frazer did not expect to receive consecutive sen-

tences, and Frazer immediately expressed his surprise and discontent. After the judge announced Frazer's sentence, Frazer asked Howle to see "about having time run together." J.A. 189.

Despite a prior assurance that he would "file the necessary paperwork" if something went wrong at sentencing, J.A. 178, Howle's only effort to that end was an informal oral motion for reconsideration, which the court denied without order or other elaboration. At no time either before or after the denial of the motion for reconsideration did Howle ascertain whether Frazer wished to appeal. As a result, the period for noting an appeal passed without a notice of appeal being filed, a fact Frazer did not learn until after he wrote Howle to express his continuing dissatisfaction and desire to pursue an appeal.

Frazer filed a state application for post-conviction relief ("PCR") on February 10, 1997. His application alleged that he received ineffective assistance of counsel, that his plea had not been knowing and voluntary, and that the trial court lacked jurisdiction to accept the guilty plea.[1] Following an evidentiary hearing at which Howle testified, the PCR court concluded that it was appropriate to adjust Frazer's fine from $100,000 to $25,000 (the amount both parties agreed was the maximum for the trafficking charge), but that Frazer was otherwise not entitled to relief. The PCR court noted that, although Howle

"never informed him of his right to appeal," there was nothing in the record or the hearing "to indicate that [Frazer] conveyed to his trial attorney a desire to appeal until it was too late." J.A. 209. The PCR court's order issued on September 17, 1999. Frazer appealed the PCR court's decision to the South Carolina Supreme Court by petition for certiorari dated June 12, 2000. The South Carolina Supreme Court summarily denied Frazer's petition on May 30, 2002.

On March 7, 2003, Frazer filed the underlying pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Frazer's application renewed the five issues presented to the South Carolina Supreme Court.[2] His § 2254 application was referred to a magistrate judge who recommended denying relief on all claims, finding no error in the PCR court's reasoning that Howle was under no Sixth Amendment obligation to consult with Frazer regarding an appeal. Frazer filed timely objections to this recommendation.

Following a de novo review, the district court found that Howle had an obligation under *Strickland* to consult with Frazer regarding an appeal. While acknowledging that Frazer never formally demanded an appeal until after the appeal period had expired, the district court noted

> [t]he undisputed evidence shows that, immediately after sentencing, Frazer and Howle agreed that Howle would seek review of the sentence. Howle as-

---

1. Frazer had previously filed a PCR application on October 31, 1995, but withdrew it voluntarily the following year. When Frazer refiled his PCR petition, the PCR court initially dismissed Frazer's application as successive, but the South Carolina Supreme Court permitted Frazer to re-file it.

2. In addition to his claim regarding Howle's failure to consult, Frazer contended that: 1) the trial court lacked jurisdiction to accept his guilty plea; 2) his indictment was defective;

3) Howle had also been ineffective by failing to adequately consult with him prior to his change of plea; 4) his plea was not knowingly and voluntarily entered; and 5) that his sentencing was vindictive. The district court dismissed claims 1) through 3) with prejudice, and dismissed claims 4) and 5) without prejudice. Neither South Carolina nor Frazer contests the district court's resolution of these issues.

sured Frazer that he "would file the necessary paperwork" to have the sentence modified, and Frazer did not hear from Howle again until Frazer contacted him about the status of his appeal. J.A. 114. The district court specifically noted that "Frazer reasonably demonstrated to Howle that he was interested in seeking review of the sentence," and that "there were non-frivolous grounds for appeal." *Id.* at 115. The district court's order granting habeas relief on this claim was entered on February 12, 2004, and South Carolina noted a timely appeal.

## II.

■ A district court's decision to grant habeas relief is reviewed de novo. *Allen v. Lee,* 366 F.3d 319, 323 (4th Cir. 2004) (en banc), *cert. denied,* 543 U.S. 906, 125 S.Ct. 208, 160 L.Ed.2d 182 (2004). As with the district court, our review of a habeas petitioner's claims is governed by the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (the "AEDPA"). In relevant part, the AEDPA provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402–13, 120 S.Ct.

1495, 146 L.Ed.2d 389 (2000) (discussing § 2254(d)). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" requires that federal courts assess the validity of the inmate's claims based on the holdings of the Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. A state habeas court unreasonably applies clearly established Federal law when it "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495.

## A.

■ The legal principle applicable to claims of ineffective assistance of counsel are set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* establishes the extent and nature of counsel's obligations to the defendant and a two-part test for assessing whether counsel has proved ineffective in discharging those obligations. First, the defendant must prove that his counsel's efforts were objectively unreasonable when measured against prevailing professional norms. *Id.* at 688–90, 104 S.Ct. 2052. Second, the defendant must demonstrate that counsel's performance, if deficient, was also prejudicial. *Id.* at 694, 104 S.Ct. 2052. This generally requires the defendant to demonstrate by a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.*

■■ The two-part test of *Strickland* that defendants must satisfy in order to prevail on an ineffective assistance of counsel claim unquestionably qualifies as "clearly established" federal law under § 2254(d). *Williams,* 529 U.S. at 391, 120 S.Ct. 1495 ("It is past question that the rule set forth in *Strickland* qualifies as

**704**

'clearly established Federal law, as determined by the Supreme Court of the United States.' "). In *Roe v. Flores–Ortega,* 528 U.S. 470, 477–80, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court applied *Strickland* to hold that counsel's duty to consult with the defendant generally requires counsel to discuss with the defendant whether to pursue an appeal. 528 U.S. at 477–80, 120 S.Ct. 1029. The Court then followed the two-part test of *Strickland* to assist courts in establishing whether the particular failure to consult regarding an appeal amounted to ineffective assistance. However, because *Flores–Ortega* issued after Frazer's state-court conviction became final, we must take up the threshold issue of whether we are relying on that decision in violation of the non-retroactive principle announced in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[3] *See Horn v. Banks,* 536 U.S. 266, 271–72, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) (per curiam) (noting federal habeas courts must take up an analysis under *Teague* where necessary *before* addressing the merits of the defen-

**B.**

▉▉▉ Under *Teague,* a state prisoner collaterally attacking his conviction may not rely on a new constitutional rule announced after his conviction became final.[4] *Teague,* 489 U.S. at 310–11, 109 S.Ct. 1060. A new rule is one which "breaks new ground," "imposes a new obligation on the States or the Federal Government," or "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060. As the Supreme Court has noted, these are guidelines rather than rigidly applied criteria, and no single test is determinative. *See Gilmore v. Taylor,* 508 U.S. 333, 340, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (noting the "dictated by" test is meaningful in a "majority of cases").

▉▉▉ Applying these guidelines to *Flores–Ortega* demonstrates that it does not present a new constitutional rule under *Teague.* Rather, *Flores–Ortega* simply crystalizes the application of *Strickland* to

dant's claims under the standards of the AEDPA).

**3.** There is an exception to this rule: "a federal court may, but need not, decline to apply *Teague* if the State does not argue it." *Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). Although we opt to apply *Teague* here, South Carolina's failure to address the matter in its opening briefs to this court could provide adequate grounds to forego this inquiry altogether. *See, e.g., Pleasurecraft Marine Engine Co. v. Thermo Power Corp.,* 272 F.3d 654, 657 (4th Cir.2001); *Arredondo v. Ortiz,* 365 F.3d 778, 781 (9th Cir.2004) (declining to apply *Teague* sua sponte where it was mentioned by the state "only in passing"), *cert. denied,* 543 U.S. 892, 125 S.Ct. 102, 160 L.Ed.2d 156 (2004); *see also Noland v. French,* 134 F.3d 208, 212 (4th Cir.1998) (noting the *Teague* rule is in the nature of an affirmative defense); *Royal v. Taylor,* 188 F.3d 239, 247 (4th Cir.1999) ("Because in the district court the Commonwealth failed to raise the [affirmative defense] of ... default with respect to these claims (*indeed it*

*affirmatively asserted that the claims had been decided on the merits* ), it has waived its right to pursue the matter on appeal." (emphasis added)).

**4.** The non-retroactivity rule of *Teague* is subject to two exceptions not applicable here. "The first exception permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the State to proscribe, ... or addresses 'substantive categorical guarante[e] accorded by the Constitution,' such as a rule 'prohibiting a certain category of punishment for a class of defendants because of their status or offense.' " *Saffle v. Parks,* 494 U.S. 484, 494, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (citations omitted). "The second exception is for 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 495, 110 S.Ct. 1257.

the specific context presented by Frazer's claim. *Flores–Ortega,* 528 U.S. at 476–81, 120 S.Ct. 1029. In making this tailored analysis, the Supreme Court relied exclusively on the principles announced in *Strickland* and other cases defining the role of counsel in the appellate process. *See id.* Indeed, the Court's conclusions in *Flores–Ortega* are dictated by its prior conclusions that: a) the defendant has ultimate authority to make the fundamental decision as to whether to take an appeal, *Jones v. Barnes,* 463 U.S. at 751, 103 S.Ct. 3308, and b) counsel's obligation to assist the defendant includes a duty "to consult with the defendant on important decisions," *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

■■■■■ The necessity of counsel's consultation with the defendant regarding the fundamental decision of whether to appeal is clear from *Strickland* and cases preceding it that address the nature of the defendant's right to a direct appeal. A defendant has a right to pursue a direct appeal, even if frivolous, which counsel must assist as "an active advocate in behalf of his client." *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Although counsel need not press particular issues of the defendant's choosing, by implication counsel must consult with the defendant to identify whether there are any meritorious issues to appeal. *Barnes,* 463 U.S. at 752, 103 S.Ct. 3308. Indeed, a discussion with the defendant regarding a direct appeal and what issues to pursue (if any) is critical, as "multiplying assignments of error will dilute and weaken a good case and will not save a bad one." *Id.* (internal quotations omitted). The defendant's need for the assistance of an advocate who can "examine the record with a view to selecting the most promising issues for review," *id.,* cannot be overstated, and is a necessary component of

the "particular dut[y] to consult with the defendant on important decisions" identified in *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. *Flores–Ortega's* distillation that counsel generally (but not invariably) has a duty to consult with his client regarding whether to pursue an appeal is thus dictated by *Strickland.* As such, the Court did not break new ground for *Teague* purposes with respect to counsel's duty to consult.

■■■■■ *Flores–Ortega's* formulation of the prejudice prong of *Strickland* likewise presents nothing new under *Teague.* The *Flores–Ortega* Court noted explicitly that its tailoring of *Strickland's* prejudice prong to better suit the context of an attorney's obligation to consult regarding an appeal "breaks no new ground," as it "mirrors the prejudice inquiry applied in *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and *Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969)." 528 U.S. at 485, 120 S.Ct. 1029. Because the Court did not impose on defense counsel a new duty and did not believe it was postulating a new rule regarding prejudice, *Flores–Ortega* introduces no element or consideration that federal courts would be foreclosed from applying retroactively. Indeed, South Carolina does not argue to the contrary, as it did not raise the issue in its briefs and expressly disclaimed it at oral argument.

Finally, both the procedural posture in which *Flores–Ortega* arose and the Supreme Court's disposition of the case confirm that it did not announce a new rule for habeas purposes. *Flores–Ortega* involved a collateral attack on a state court sentence under 28 U.S.C. § 2254. *See* 528 U.S. at 473–74, 120 S.Ct. 1029. The very fact that the Supreme Court addressed the merits of the petition—and remanded for further proceedings—in the face of the

limitations imposed by *Teague* demonstrates that the controlling legal principle discussed in *Flores–Ortega* was not a new rule. *See Penry v. Lynaugh,* 492 U.S. 302, 313, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated on other grounds, *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) ("Under *Teague,* new rules will not be applied or announced in cases on collateral review unless they fall into one of two exceptions.") Had the principle not been clearly established, the Supreme Court, as well as all lower Federal courts, would have been precluded by *Teague* from granting the relief requested by the petitioner in *Flores–Ortega.*

Accordingly, we join the Third Circuit in holding that *Flores–Ortega* does not constitute a new rule for the purposes of *Teague. Lewis v. Johnson,* 359 F.3d 646, 657 (3d Cir.2004);[5] *but see Daniel v. Cockrell,* 283 F.3d 697, 707–08 (5th Cir.2002) (assuming, without deciding, that *Flores–Ortega* announced a "new" rule for *Teague* purposes), *abrogated in part, United States v. Grammas,* 376 F.3d 433, 438 (5th Cir.2004). Neither *Teague* nor § 2254(d) forecloses an examination of Frazer's entitlement to habeas relief under *Strickland* and its most directly applicable progeny, *Flores–Ortega.*

### C.

The dissent, and the dissent alone, asserts that we cannot rely on the elaboration of *Strickland* in *Flores–Ortega* in evaluating Frazer's claim of ineffective assistance of counsel. Although South Carolina nowhere makes this argument, the dissent posits on its behalf that because *Flores–Ortega* issued after the PCR court rendered its decision, the AEDPA forecloses any recourse to *Flores–Ortega* in evaluating Frazer's claim. While § 2254(d) does limit the availability of federal habeas relief to claims that rely on "clearly established Federal law," the dissent's insistence on divorcing the *Teague* and Section 2254(d) analysis in this case is misguided. The Supreme Court has made clear that *"whatever* would qualify as an old rule under our *Teague* jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under § 2254(d)(1)." *Williams,* 529 U.S. at 412, 120 S.Ct. 1495 (emphasis added).[6]

### III.

Assessing Frazer's claim under these precedents, we agree with the district court that the "state PCR court's decision constituted an unreasonable application of *Strickland.*"[7] J.A. 112. The

5. In *Lewis v. Johnson,* the Third Circuit noted that *Strickland* established a rule of "general applicability" necessitating a case-by-case assessment, and that the proposition that "a defendant requires the advice of counsel to make an informed decision respecting his right to appeal [ ] was hardly novel" when the habeas applicant's state-court conviction became final. 359 F.3d at 655, 656. Affording Frazer the benefit of *Flores–Ortega* comports with the Supreme Court's emphasis that a given constitutional rule be applied uniformly and consistently within each class of appeal, so as to avoid an unjust disparity in the treatment of similarly situated defendants.

6. Although *Williams* tells us that an old rule under *Teague* constitutes "clearly established"

federal law for purposes of § 2254(d)(1), we recognize that the converse is not necessarily true. This is so because a rule may be announced after a defendant's conviction becomes final, which is the relevant point for purposes of a *Teague* analysis, but before the relevant state court decision, which is determinative for purposes of consideration under § 2254(d)(1). That latter scenario is not the case here, however. Our analysis is governed by *Strickland,* which pre-dated both the conviction and PCR court review.

7. We recognize that the PCR court's decision is the relevant state-court decision for purposes of 28 U.S.C. § 2254(d).

PCR court denied habeas relief without considering whether Howle had a duty to consult with Frazer regarding an appeal that was distinct from the generic obligation to apprise Frazer of that right. The PCR court's failure to assess the extent of Howle's duty to consult under the circumstances, despite having identified *Strickland* as the relevant paradigm in which to assess Frazer's claim, demonstrates an unreasonable application of that paradigm.

■ As noted above, *Strickland* requires that the inmate demonstrate counsel's performance was objectively unreasonable and that he was prejudiced by this unreasonable performance. *Strickland*, 466 U.S. at 688–90, 94, 104 S.Ct. 2052. The *Flores–Ortega* Court explained that the Sixth Amendment generally, but not invariably, requires counsel to consult with the defendant regarding a direct appeal. 528 U.S. at 477–80, 120 S.Ct. 1029. Significantly, the PCR court determined only that Frazer's counsel was under no constitutional obligation to inform him of his right to appeal under the circumstances of this case. Counsel's obligation to consult, however, is distinct from the duty to inform. *See id.* at 688, 104 S.Ct. 2052 (identifying "more particular duties to consult with the defendant on important decisions

*and* to keep the defendant informed of important developments in the course of the prosecution" (emphasis added)). Therefore, when confronted with a claim that counsel rendered ineffective assistance in failing to consult with the defendant regarding an appeal, a court must conduct a three-step inquiry.

■ The threshold consideration is whether the defendant had independently decided whether to appeal and communicated that decision to counsel.[8] If the defendant has affirmatively requested an appeal, counsel's assistance to the defendant in making that decision is obviously unnecessary. *See id.* at 477, 120 S.Ct. 1029. Indeed, long before *Strickland*, the Supreme Court held that the "fundamental decision" of whether to appeal rests with the defendant. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

■ Where, as here, the defendant has not specifically requested an appeal, counsel is under a professional obligation to "consult" with the defendant regarding that fundamental decision, unless the circumstances demonstrate that consultation is unnecessary. *Flores–Ortega*, 528 U.S. at 478–79, 120 S.Ct. 1029.[9] If counsel fails

---

8. Because the dissent rejects the relevance of *Flores–Ortega*, its analysis of the merits asks only whether Frazer explicitly requested that Howle file an appeal and whether Howle was obliged to inform Frazer of that right. *Post* at 731. However, we believe it clear based on *Strickland* and *Barnes* that this is an incomplete analysis, and this conclusion is reinforced by *Flores–Ortega*. The dissent's insistence that we ignore *Flores–Ortega's* distillation of *Strickland* and *Barnes* given the procedural posture of this appeal is, as noted above, unpersuasive.

9. *Flores–Ortega* offers two examples where counsel would be relieved of a duty to consult by circumstance. *Flores–Ortega* notes that where

a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is professionally unreasonable, as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as

to consult, the defendant may demonstrate prejudice by showing that a rational defendant would want to appeal. The defendant may do this by demonstrating either that a) there were non-frivolous issues for appeal, or b) he had adequately indicated his *interest* in appealing. *Id.* at 480, 120 S.Ct. 1029. The mere presence of non-frivolous issues to appeal is generally sufficient to satisfy the defendant's burden to show prejudice. *Id.* at 486, 120 S.Ct. 1029. Attempting to demonstrate prejudice based on a reasonably obvious interest in pursuing an appeal, however, necessitates an additional showing "that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.*

### A.

After reviewing the factual determinations of the PCR court and according them the deference required by § 2254(e), we find the denial of relief on Frazer's habeas claim unreasonably applied *Strickland* and its progeny. As noted above, after accepting Frazer's guilty plea, the trial court proceeded immediately to sentencing, and imposed consecutive sentences as well as a statutorily impermissible fine. The PCR court found that Frazer did not explicitly request an appeal at that time, and it is undisputed that Howle never discussed that possibility with Frazer. Nevertheless, the PCR court found no Sixth Amendment violation, citing *Carey v. Leverette*, 605 F.2d 745 (4th Cir.1979), for the proposition that "there is no constitutional

> to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal. 528 U.S. at 479–80, 120 S.Ct. 1029 (internal quotations and citations omitted).

requirement that necessitates that trial counsel inform a criminal defendant of his right to appeal, following a guilty plea." J.A. 209.

■ That this result is objectively unreasonable in light of the dictates of *Strickland* is made abundantly clear by *Flores–Ortega*. While *Flores–Ortega* echoes the holding in *Carey* that there is no *per se* rule requiring counsel to consult with his client regarding a direct appeal, *Carey* does not delineate the circumstances under which such a duty would apply. *Flores–Ortega* does, however, illustrate that when there are non-frivolous issues to appeal or the defendant has manifested an interest in appealing, *Strickland* requires that counsel consult with the defendant in deciding whether to go forward. *Flores–Ortega*, 528 U.S. at 478–79, 120 S.Ct. 1029. Significantly, this duty applies even if the defendant has pled guilty. Although there may be fewer issues to appeal under such circumstances, so long as the defendant retains an appeal of right, counsel's obligation remains the same. *See id.* at 480, 120 S.Ct. 1029.

■ The PCR court's reliance on our decision in *Carey* as determinative of Frazer's claim is unreasonable even without the benefit of *Flores–Ortega*. *Carey's* holding conflicts with the subsequent decisions in *Strickland* and *Jones,* which a) require counsel to assist the defendant with all important decisions, and b) identify the decision whether to pursue a direct appeal as an important decision that ultimately lies with the defendant.[10] The duty to

10. Interestingly, South Carolina does not contend that we are barred from considering Frazer's claim in light of *Flores–Ortega*. Indeed, South Carolina asserts that *Carey* is consistent with *Flores–Ortega*. For the reasons stated, we disagree. *Carey* presumes that counsel need not inform or consult with his defendant regarding the right to appeal. *Flores–Ortega*, however, states the opposite:

consult identified in *Strickland* is broader than the narrow obligation to inform a defendant of his right to appeal. As *Strickland* itself makes clear,

> [r]epresentation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, ... [which includes] the overarching duty to advocate the defendant's cause *and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.*

466 U.S. at 688, 104 S.Ct. 2052. *Strickland* itself indicates that the duty to consult and the duty to inform are "particular," and therefore distinct obligations on counsel. It is therefore inadequate to simply analyze whether Howle discharged his duty to inform Frazer of his right to appeal; Howle had a separate obligation to consult regarding an appeal as well. Although the PCR court did not have the benefit of *Flores–Ortega* and its synthesis of the holdings in *Strickland* and *Barnes,* the two later decisions were available to the PCR court and the rules contained therein were clearly established at the time the PCR court reached its decision.

### B.

We turn now to whether Frazer can satisfy the requirements that the *Flores–Ortega* Court distilled from *Strickland.* In order to demonstrate prejudice from Howle's failure to consult, Frazer must show that a rational defendant in his position would want to appeal. He may do so by either identifying non-frivolous issues that could have been appealed or by showing that he adequately expressed an interest in pursuing an appeal. *Flores–Ortega,*

that "in the vast majority of cases, counsel [will] ha[ve] a duty to consult with a defen-

528 U.S. at 480, 120 S.Ct. 1029. We conclude that Frazer has shown both.

### 1.

We agree with the district court that Frazer could have pursued two non-frivolous issues on appeal. As stated above, Frazer's guilty plea exposed him to a statutory-maximum fine of $25,000, and all parties (including South Carolina) expected that Frazer's sentences for the two counts to which he was pleading guilty would be concurrent. However, the court imposed a fine of $100,000 and, without a request from the prosecution, consecutive sentences—actions Frazer felt were impermissibly motivated. The trial court also refused to revisit its decision in response to Howle's oral motion for reconsideration. South Carolina responds that three procedural obstacles would have prevented Frazer from pressing these issues on appeal, and that therefore Howle had no duty to consult. We consider these in turn.

### a.

██ First, South Carolina contends that Frazer's guilty plea automatically foreclosed appellate review of all issues that did not relate to the trial court's subject matter jurisdiction. However, this assertion overstates the holdings of the decisions on which it is based. Although there is some broad language in South Carolina case law to the effect that "a guilty plea generally constitutes a waiver of non-jurisdictional defects and claims of violations of constitutional rights," *State v. Passaro,* 350 S.C. 499, 567 S.E.2d 862, 866 (2002) (citing *Rivers v. Strickland,* 264 S.C. 121, 213 S.E.2d 97, 98 (1975)), the general rule appears to be that "a plea of guilty, voluntarily and understandingly

dant about an appeal." 528 U.S. at 481, 120 S.Ct. 1029.

made, constitutes a waiver of non-jurisdictional defects and defenses ... *prior to the plea,*" *Rivers,* 213 S.E.2d at 98 (emphasis added).[11] Moreover, in South Carolina, "[s]entencing, although often combined with the admission of guilt in a hearing, is a separate issue from guilt and a distinct phase of the criminal process," *Easter v. State,* 355 S.C. 79, 584 S.E.2d 117, 119 (2003), which bolsters our conclusion that defendants cannot be expected to forego subsequent errors at sentencing simply by pleading guilty. In fact, the South Carolina Supreme Court has corrected a sentence on direct appeal that both parties agreed exceeded the statutory maximum, *despite* the defendant's failure to raise a sentencing objection at trial. *Johnston,* 510 S.E.2d at 425 (noting that "the State has conceded in its briefs and oral argument that the trial court committed error by imposing an excessive sentence."). Consequently, we are not persuaded that Frazer's guilty plea foreclosed an appeal as South Carolina argues.

■ Moreover, South Carolina proffers no case supporting the proposition that a virtually contemporaneous motion for reconsideration is insufficient to preserve an objection for review. To the contrary, several South Carolina cases indicate that presenting an issue to the trial court for its initial determination is all that is necessary. *See, e.g., State v. Johnston,* 333 S.C. 459, 510 S.E.2d 423, 425 (1999) (stating that if an "issue was not *raised below* and did not involve subject matter jurisdiction," the defendant could not raise it for the first time on appeal (emphasis added)); *State v. Williams,* 303 S.C. 410, 401 S.E.2d 168, 169 (1991) (noting that it is the failure to "interpose[ ] a *timely objection at sentencing* in order to have [an] issue ruled upon by the circuit court in the first instance" that forecloses further review (emphasis added)); *State v. Woodruff,* 300 S.C. 265, 387 S.E.2d 453, 454 n. 1 (1989) ("Matters *not passed upon by the trial court* will not be reviewed." (emphasis added)).[12] And to the extent that ambiguity exists regarding preservation of error in such circumstances, it suggests the existence of another non-frivolous issue for appeal.

■ South Carolina further argues that an affidavit Frazer signed just prior to pleading guilty, in which he acknowledged his right to appeal, relieved Howle

---

11. *See also Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (holding entry of guilty plea waives challenges to "the deprivation of constitutional rights that occurred *prior to the entry of the guilty plea* " (emphasis added)).

12. The fact that there was little opportunity at sentencing to protest the judge's sentence and that the judge did not appear amenable to an objection adds weight to the argument that, under the present circumstances, an oral motion for reconsideration could suffice to preserve review. Frazer's sentencing hearing concluded as follows:

"The sentence on the trafficking in cocaine; you be [sic] incarcerated for a period for ten years and pay a fine of one hundred thousand dollars.

Sentence on the possession of a weapon during a violent crime, that you be incarcerated for a period of five years to run consecutive.

I'm recommending counseling and treatment for drug abuse. And I will tell you this, that if you had gone to trial on the charges it's my firm belief that you would have been convicted of the charges and I would have given you every day that I could have based on what I consider to be a trial without merit."

J.A. 137. Frazer's sentencing adjourned immediately following these statements, without an opportunity for final comments or objections. Generally, if a defendant "had no opportunity to object to or comment" on particular aspects of his sentence, his failure to press a contemporaneous objection would not result in the waiver of subsequent review. *United States v. Warden,* 291 F.3d 363, 365 n. 1 (5th Cir.2002).

of any obligation to consult with Frazer regarding an appeal. Frazer's "Affidavit of Defendant for Guilty Plea" does reflect his understanding of his right to appeal. However, that document is insufficient to relieve Howle of his obligations under *Strickland* and *Flores–Ortega*, as an attorney's duty to consult requires more than informing the defendant that he has the right to appeal. The term consult "convey[s] a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to discover the defendant's wishes."[13] *Flores–Ortega*, 528 U.S. at 478, 120 S.Ct. 1029 (emphasis added). Simply demonstrating that the defendant was actually or constructively aware of his right to appeal is insufficient to relieve defense counsel of his obligations under *Flores–Ortega*.[14]

 Finally, South Carolina argues that the only issue Frazer could have raised on appeal is now frivolous, as the PCR court remedied this error by reducing the fine. Even assuming for the sake of argument that this is indeed the only issue Frazer could have pressed on appeal, we disagree. Both parties agree that the fine exceeded the statutory maximum when it was imposed by the trial court.[15] In establishing whether counsel had an obligation to consult given the circumstances, *Flores–Ortega* asks only whether the defendant would have elected to proceed with an appeal following that consultation. It is therefore the presence of error in the conviction or sentence at the time the decision to appeal is to be made that is determinative. The correction of the error in a separate proceeding is irrelevant to the issue of counsel's obligation to consult.

b.

 Turning to whether there existed non-frivolous issues for appeal, we note at least two: the excessive fine and the imposition of consecutive sentences. With respect to the first, South Carolina's acknowledgment that Frazer's fine exceeded the statutory maximum indicates that Frazer could have pressed it on appeal. As noted above, there is precedent allowing South Carolina defendants to present an otherwise unpreserved sentencing error where "the State has conceded in its briefs and oral argument that the trial court committed error." *Johnston*, 510 S.E.2d at 425. Consequently, the excessive fine presents a non-frivolous issue that triggered Howle's duty to consult.

 Second, the district court noted that Frazer arguably could have challenged the trial court's decision to impose consecutive sentences. South Carolina correctly notes that in South Carolina, trial judges have "broad discretion in sentencing within statutory limits," and that neither of Frazer's custodial sentences exceeded the relevant statutory maximum. However, there is an exception to this rule where there are "facts supporting an allegation of prejudice" against the defendant. *Garrett v. State*, 320 S.C. 353, 465 S.E.2d 349, 350 (1995). Here, the trial court's

---

13. Indeed, at argument counsel for South Carolina conceded that Howle had not consulted with Frazer within the meaning of *Flores–Ortega*.

14. We note that it appears this would also be insufficient as a matter of South Carolina law. *In re Anonymous Member of the Bar*, 303 S.C. 306, 400 S.E.2d 483 (1991); *White v. State*, 263 S.C. 110, 208 S.E.2d 35, 39 (1974) (noting that even though there is "a reasonable basis for trial counsel's conclusion or assumption that the defendant was fully aware of his appeal rights, counsel should not have rested upon that assumption").

15. *See* S.C.Code Ann. §§ 44–53–370, 44–53–375.

decision to impose consecutive sentences took both parties by surprise, and Frazer's sentencing took place just one day after "a heated [pre-trial] hearing" in which "thing[s] really kind of went [s]outh." J.A. 183–84. Describing this hearing as "brutal," Howle noted that "any adverse ruling we could have had" from the judge that sentenced Frazer the following day, "we got." *Id.* at 184. Under these circumstances, we are not persuaded that an assertion by Frazer that his sentence was "the result of partiality [or] prejudice" would be frivolous. *Garrett,* 465 S.E.2d at 350 (internal quotations omitted).

### 2.

■ In the alternative, Frazer may show prejudice under *Flores–Ortega* by demonstrating an interest in an appeal and showing that a consultation with his counsel would not have dissuaded him from pursuing it. It is uncontested that, immediately following sentencing, Frazer indicated his unhappiness with his consecutive sentences and asked Howle to see about "having [them] run together." J.A. 128. It was in fact Frazer's indication of dissatisfaction that prompted Howle to make his oral motion for reconsideration. Given that Frazer need only demonstrate an *interest* in appealing, *Flores–Ortega,* 528 U.S. at 480, 120 S.Ct. 1029, Frazer meets the initial requirement for demonstrating prejudice in this manner.

However, Frazer must also show that the resulting consultation would have galvanized that interest into a desire to go forward, rather than dissuading him. *See id.* at 486, 120 S.Ct. 1029. We find Frazer's letter to Howle satisfies this secondary showing. Frazer was clearly

dissatisfied that the district court refused to reconsider its sentencing decisions, and expressed his dissatisfaction both as the sentencing hearing concluded and in subsequent communications with Howle. Because Frazer's interest in an appeal was unwavering and ongoing, we find it adequately reflects both his interest in an appeal and an intent to pursue them at all costs. Frazer's tenacity in pursuing habeas relief only bolsters this conclusion.[16]

### IV.

Because we agree with the district court that, in light of *Strickland* and *Flores–Ortega,* Frazer's counsel had an obligation to consult with him regarding an appeal, and that Frazer was prejudiced by his counsel's failure to do so, we find the PCR court unreasonably applied federal law in rejecting this claim. Accordingly, we affirm the district court's grant of habeas relief.

*AFFIRMED.*

DIANA GRIBBON MOTZ, Circuit Judge, concurring:

I concur in Judge Duncan's opinion for the court. I write separately simply to set forth more fully why I believe the district court correctly granted habeas relief here.

The Antiterrorism and Effective Death Penalty Act (AEDPA) authorizes a federal court to grant an application for a writ of habeas corpus with respect to a claim adjudicated on the merits in state court if that adjudication "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the

---

**16.** Because the dissent's analysis of the merits of Frazer's claim is predicated on its conclusion that *Flores–Ortega* does not apply, its analysis is largely irrelevant. We therefore forego taking up its contentions regarding the merits of Frazer's claim as doing so would not advance the resolution of this appeal.

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1)(2000). The Supreme Court has explained that "[a] state-court decision will certainly be contrary to" clearly established Federal law, as determined by the Supreme Court, "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407–408, 120 S.Ct. 1495 (alterations in original).

The Court has further explained that "'clearly established Federal law, as determined by the Supreme Court' . . . refers to the holdings, as opposed to the dicta," in Supreme Court decisions "as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. Moreover, and of particular significance in this case, the *Williams* Court has instructed that "whatever would qualify as an old rule under [the Court's] *Teague* [*v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)(plurality opinion) ] jurisprudence will constitute 'clearly established Federal law,'" under § 2254(d)(1) of AEDPA as long as a Supreme Court case is the source of the rule. *Id.*

In the case at hand, the district court properly granted habeas relief because the state court decision denying Frazer's claim was both "contrary to" and "involved an unreasonable application of" *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). No one can question that *Strickland* qualifies as clearly established Supreme Court precedent; indeed, the *Williams* Court so stated. *See Williams*, 529 U.S. at 391, 120 S.Ct. 1495

("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"). Nor can there be any question that *Strickland*, which the Court issued in 1984 to establish legal principles governing claims of ineffective assistance of counsel, was extant at the time of all relevant state court decisions in this case.

To demonstrate a claim of ineffective assistance under *Strickland's* familiar two-part test, a petitioner must show that (1) "counsel's performance was deficient" and (2) that this "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. We measure prejudice under a reasonableness standard. Generally, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. However, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Id.* at 692, 104 S.Ct. 2052. As to counsel's performance, the *Strickland* Court eschewed adopting a bright-line standard or "detailed guidelines for representation," explaining that "[n]o particular set of detailed rules" could "satisfactorily take account of the variety of circumstances faced by defense counsel." *Id.* at 688–89, 104 S.Ct. 2052. Once again reasonableness is the touchstone. *Strickland* directs courts to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case." *Id.* at 690, 104 S.Ct. 2052.

In *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court did precisely this. The case *illustrates* how the *Strickland* test applies to the "facts of [a] particular case"—one involving a claim that counsel was ineffective for failing to consult with

his client about taking an appeal. For this reason, *Flores–Ortega* is obviously useful in considering Frazer's habeas claim. That the case involves a claim of ineffective assistance arising from different facts than were at issue in *Strickland* does not render the claim a "new" one unresolved by clearly established Supreme Court precedent and, therefore, barred by AEDPA. Although this argument is occasionally offered, it has gained little traction in the Supreme Court. Rather, the Court has directed that "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." [1] *Williams*, 529 U.S. at 391, 120 S.Ct. 1495. Thus, as the Court has explained, just because "the *Strickland* test of necessity requires a case-by-case examination of the evidence," this "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established' [for AEDPA purposes] by this Court." *Id.* (internal quotation marks and citation omitted).

Moreover, the fact that the Supreme Court issued *Flores–Ortega after* the state court denied Frazer's ineffective assistance claim does *not* prevent a federal habeas court from considering *Flores–Ortega* in resolving Frazer's claim under AEDPA. In *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), the Supreme Court soundly and explicitly rejected the contention that AEDPA prohibits consideration of cases postdating the state-court decision under review. In

*Wiggins*, the Court concluded that, notwithstanding AEDPA, it could consider a case issued *after* the relevant state court decision because its recently decided case simply "illustrat[ed] the proper application" of *Strickland*. *Id.* at 2535–36.

*Wiggins* provides important guidance here. The *Wiggins* Court first looked to *Strickland*, setting forth the *Strickland* test and noting that although *Strickland* had "declined to articulate specific guidelines for appropriate attorney conduct," it had set forth the proper standards for generally assessing the challenged judgments of counsel "in terms of the adequacy of the investigations supporting those judgments." *Id.* at 2535; *see Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052. The *Wiggins* Court next looked to its recent decision in *Williams*, in which it had found a habeas claim similar to Wiggins' ineffectiveness claim to be "meritorious." *Wiggins*, 123 S.Ct. at 2535. The *Wiggins* Court expressly found its recent "opinion in *Williams v. Taylor* [to be] illustrative of the proper application of the[ ] [relevant *Strickland* ] standards" *and* relied on the rationale of *Williams* in holding that *Wiggins* involved a violation of clearly established Supreme Court precedent. *See id.*

Justice Scalia, in dissent, objected to the majority's reliance on *Williams* because *Williams* "postdate[d] the Maryland court's decision rejecting Wiggins' Sixth Amendment claim." *See id.* at 2546 (Scalia, J., dissenting). Although the Supreme

---

**1.** The dissent mystifyingly claims that this sentence, which contains only six words in addition to an accurate quotation from *Williams*, somehow finds "no support" in *Williams*. *Post* at 723. The dissent also suggests that I have taken this passage from *Williams* "out of context." *Id.* But, this is not so. The sentence from *Williams* states in its entirety: "It is true that while the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel

claims, there are situations in which the overriding focus on fundamental fairness may affect the analysis." *Williams*, 529 U.S. at 391, 120 S.Ct. 1495. Thus, the *Williams* Court specifically "directed," as I note, that the *Strickland* analysis guides "virtually all ineffective-assistance-of-counsel claims." When, as here, that analysis dictates the result in a given application of *Strickland*, it provides "clearly established law" for AEDPA purposes.

Court had decided *Williams after* the state court upheld the denial of Wiggins' claim for post-conviction relief, the majority rejected Justice Scalia's complaint, explaining that it could look to *Williams* as a "proper application" of *Strickland* because *Williams* had come before the Court on "habeas review" and the Court had "made no new law" in resolving Williams' effectiveness claim." *Id.* at 2535. The *Wiggins* majority held it could look to *Williams* as "illustrative of the proper application" of *Strickland* because *Williams* did not create new law, but rather was "squarely governed by [the Court's] holding in *Strickland.*" *Id.* at 2536 (quoting *Williams,* 529 U.S. at 390, 120 S.Ct. 1495). *Wiggins* teaches that even if a Supreme Court habeas case is issued *after* the relevant state court decision, it can be considered as illustrative of the proper application of *Strickland*—and, therefore, as indicative of clearly established Supreme Court precedent as of the time of that state court decision—if in the new decision the Court makes clear that it is simply applying well-established Supreme Court precedent.

Faithful adherence to the reasoning in *Wiggins* inexorably leads to the conclusion that in the case at hand the district court properly granted habeas relief. Here, as in *Wiggins,* although *Strickland* does not articulate specific guidelines for appropriate attorney conduct as to the petitioner's claim, *Strickland* does set forth the proper standards for judging that conduct. The *Strickland* Court carefully explained that among the "basic duties" owed by counsel to his client are the duties "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Whether to appeal, particularly in a case like this in which even the State concedes that an illegal sentence has been imposed, obviously constitutes a most "important decision" about which an attorney should "consult" with his client. *Id. Strickland* also establishes the proper prejudice inquiry in a situation like this in which there has been a denial of counsel "altogether" at a critical stage: that is, "prejudice is presumed." *Id.* at 692, 104 S.Ct. 2052. Thus, here, as in *Wiggins,* the " 'clearly established' precedent of *Strickland* " governs. *See Wiggins,* 123 S.Ct. at 2536.

Moreover, again as in *Wiggins,* a Supreme Court habeas case (here, *Flores–Ortega* ) issued shortly *after* the relevant state court decision *illustrates* the proper application of *Strickland* to the particular facts of the case. Indeed, the Supreme Court made it even clearer in *Flores–Ortega* than it did in *Williams* that it was simply *applying Strickland* to the facts before it. *See Flores–Ortega,* 528 U.S. at 477, 120 S.Ct. 1029 (holding that the *Strickland* "test applies to claims ... that counsel was constitutionally ineffective for failing to file a notice of appeal"); 528 U.S. at 478, 120 S.Ct. 1029 (rejecting a *per se* rule adopted by some circuits "as inconsistent with *Strickland's* holding" and concluding that the court below had "failed to engage in the circumstance-specific reasonableness inquiry required by *Strickland* "); 528 U.S. at 479, 120 S.Ct. 1029 (dismissing a suggested holding because it "would be inconsistent with both our decision in *Strickland* and common sense"); 528 U.S. at 481, 120 S.Ct. 1029 (explaining what "[t]he second part of the *Strickland* test requires"); 528 U.S. at 485, 120 S.Ct. 1029 (finding that in the case before it, "[a]s with all applications of the *Strickland* test," a defendant's ability to make the "requisite showing will turn on the facts of a particular case"); 528 U.S. at 487, 120 S.Ct. 1029 (vacating because the "court below undertook neither part of the *Strick-*

*land* inquiry").[2] Accordingly, as the *Wiggins* Court could, consistent with AEDPA, look to *Williams* as illustrative of the proper application of *Strickland* to a particular factual scenario, we can look to *Flores–Ortega* as illustrative of the proper application of *Strickland* here.

The propriety of looking to *Flores–Ortega* as illustrative of "clearly established Federal law" under AEDPA should not be surprising. Rather, such use simply accords with the fact that, as Judge Duncan has explained, Supreme Court precedent establishes *Flores–Ortega* as an old rule under *Teague,* i.e., a rule dictated by precedent (*Strickland*) existing at the time Frazer's conviction became final. When, as here, a Supreme Court case provides the *source* of an "old" *Teague* rule, that "old" rule, by definition, "will constitute clearly established Federal law ... under" AEDPA. *Williams,* 529 U.S. at 412, 120 S.Ct. 1495 (internal quotation marks and citation omitted). In the case at hand, the State does not even contend that *Flores–Ortega* announced a new rule under *Teague.* A survey of the legal landscape as it existed when Frazer's conviction and sentence became final conclusively demonstrates that it did not. For, as explained above, and by the Supreme Court itself in *Flores–Ortega, Strickland* dictated *Flores–Ortega. See also Lewis v. Johnson,* 359 F.3d 646, 655 (3d Cir.2004) (holding that "*Flores–Ortega's* application of the *Strickland* standard was dictated by precedent and merely clarified the law as is applied to the particular facts of that case"); *Hudson v. Hunt,* 235 F.3d 892, 896 (4th Cir.2000)(recognizing that "*Roe v. Flores–Ortega* clarified the application of the

*Strickland* standard to a claim that an attorney was constitutionally deficient for failing to file a notice of appeal").

In sum, *Wiggins* and the case at hand demonstrate that in assessing "clearly established Federal law" under AEDPA, a court may occasionally consider a Supreme Court opinion issued *after* the state court's denial of the petitioner's post-conviction claim. Generally, of course, when a federal habeas court asks whether a state-court decision was "contrary to" or an "unreasonable application of ... clearly established Federal law," it will consider only those Supreme Court opinions issued prior to the state court's denial of relief. However, this case—and *Wiggins*—provide the exceptions that prove this rule. Where, as here and in *Wiggins,* a Supreme Court decision post-dating state collateral review (e.g., *Williams* or *Flores–Ortega*) simply *illustrates* the appropriate application of a Supreme Court precedent that pre-dates the state-court determination (e.g., *Strickland*), a federal court on habeas may consider the postdated opinion.

Turning then to *Flores–Ortega,* there the Court explained that a counsel's failure to consult with the defendant about an appeal constitutes deficient performance if the attorney had a duty to consult. *Flores–Ortega,* 528 U.S. at 478, 120 S.Ct. 1029. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel

---

2. Moreover, *Flores–Ortega* contains no statement, or even suggestion, that its holding is in any way at odds with other Supreme Court precedents. Rather, at various junctures *Flores–Ortega* cites and relies on some of *Strickland's* numerous antecedents and proge-

ny, including *Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), and *Peguero v. United States,* 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (both the majority opinion and Justice O'Connor's concurrence).

that he was interested in appealing." *Id.* at 480, 120 S.Ct. 1029. Once the defendant establishes deficient performance, he is entitled to relief if he can show prejudice. *Id.* at 481, 120 S.Ct. 1029. "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484, 120 S.Ct. 1029.

When these principles are applied to the case at hand it is clear that the state court's decision rejecting Frazer's ineffective-assistance claim was both "contrary to" and "involved an unreasonable application of" this clearly established law.

The state PCR court recounted that Frazer "testified that Counsel never informed him of his right to appeal and never filed an appeal on his behalf." J.A. 209. The PCR court then expressly found that "Counsel agreed, testifying he never discussed a direct appeal with [Frazer]." *Id.* Nevertheless, the PCR court rejected Frazer's ineffective assistance claim. Relying on our pre-*Strickland* decision, *Carey v. Leverette,* 605 F.2d 745 (4th Cir. 1979), the PCR court concluded that Frazer's counsel was not deficient for failing to file an appeal because there was nothing in the record and no testimony at the hearing "to indicate that the Applicant conveyed to his trial attorney a desire to appeal until it was too late." J.A. 209–10.

This court's holding in *Carey*—that absent "extraordinary circumstances" no "constitutional requirement" mandates "that defendants must always be informed of their right to appeal following a guilty plea," *Carey,* 605 F.2d at 746—adopted the type of bright-line rule the Supreme Court expressly rejected in *Strickland* and its progeny. *See, e.g., Strickland,* 466 U.S. at 688–90, 104 S.Ct. 2052 (refusing to adopt "detailed rules" or provide "special amplifi-

cation" of its two-part test); *Flores–Ortega,* 528 U.S. at 478, 120 S.Ct. 1029 (rejecting a *per se* rule "as inconsistent with *Strickland's* holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances' "). *Strickland* and *Flores–Ortega,* unlike *Carey,* do not require the defendant to demonstrate "extraordinary circumstances" to obtain relief. While *Carey* holds that in most cases (i.e. "absent extraordinary circumstances") an attorney need not inform his client about his appellate rights, *Flores–Ortega* clearly illustrates that *Strickland* requires a contrary rule: "in the vast majority of cases, . . . counsel [will] ha[ve] a duty to consult with the defendant about an appeal." *Flores–Ortega,* 528 U.S. at 481, 120 S.Ct. 1029. Accordingly, the PCR court's reliance on *Carey* was contrary to clearly established federal law. *See Williams,* 529 U.S. at 405, 120 S.Ct. 1495 ("A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.")

For similar reasons, to the extent that the PCR court applied *Strickland* (which it cited once) when it followed *Carey,* the court engaged in an unreasonable application of *Strickland,* a clearly established Supreme Court precedent. *Id.* at 407–08, 120 S.Ct. 1495 (explaining that if "[a] state-court decision . . . correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," it "certainly would qualify" as "an unreasonable application of . . . clearly established Federal law"). *Strickland* makes clear that to be constitutionally effective, counsel must "consult with the defendant on important decisions" and "keep the defendant informed of important developments in the course of the prosecution." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

As explained above, *Flores–Ortega* illustrates the proper application of *Strickland* when counsel fails to consult with his client about taking an appeal when nonfrivolous grounds for appeal exist. *See Flores–Ortega,* 528 U.S. at 480, 120 S.Ct. 1029. Frazer's counsel utterly failed to consult with his client about an extremely important decision—whether to file an appeal in light of the unexpected and illegal sentence imposed by the trial court. Since the PCR court denied relief despite finding that counsel *"never* discussed a direct appeal with" Frazer, J.A. 209 (emphasis added), even though nonfrivolous grounds for appeal existed, the PCR court's application of *Strickland* was unreasonable.

Because the state court's decision in this case was both contrary to and involved an unreasonable application of clearly established law, the district court properly reviewed Frazer's claim *de novo. See Rose v. Lee,* 252 F.3d 676, 689–90 (4th Cir.2001). Moreover, as Judge Duncan has demonstrated, the district court properly concluded that Frazer established that his trial counsel's conduct was objectively unreasonable and demonstrated the requisite prejudice resulting from the constitutionally deficient representation. *See ante* at 14–19; *see also Frazer v. State of South Carolina,* No. 03–CV–738 (D.S.C. Feb. 12, 2004). Accordingly, we must affirm the order of the district court granting habeas relief.

LUTTIG, Circuit Judge, dissenting:

The majority's grant of the writ of habeas corpus is transparently based on the impermissible holding that the state PCR court's decision was an unreasonable application of a Supreme Court precedent that post-dated that decision. Although the

majority asserts conclusorily that the state PCR court's failure was in not reasonably applying *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it is evident that the majority actually reasons and holds that the state PCR court unreasonably applied *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). In fact, it is as if its opinion were reasoned and written on the mistaken understanding that *Flores–Ortega* was decided before the state PCR court reached its decision, and then amended so as to state (though not reason) that it rested on *Strickland* when it was discovered that *Flores–Ortega* actually post-dated the state PCR court's decision. Of course, because *Flores–Ortega* was not decided until *after* the only state court to consider the merits of Frazer's claim (the state PCR court) issued its decision,[1] it is impermissible under section 2254(d)(1) for the majority to rely upon that opinion to hold that the state unreasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States." As it is apparent that clearly established Supreme Court precedent *at the time of the state PCR court decision* did not dictate that Frazer be afforded relief on his ineffective assistance of counsel claim, I would hold that the state PCR court did not unreasonably apply clearly established Supreme Court precedent and I would reverse the contrary judgment of the district court.

I.

Both the majority and the concurring opinion attempt to evade section 2254(d)(1)'s requirements by holding that the rule of *Flores–Ortega* was an old rule of constitutional law under *Teague v.*

---

**1.** The state PCR court rendered its decision dismissing Frazer's claims on September 17, 1999, J.A. 215, and the Supreme Court decided *Flores–Ortega* on February 23, 2000. The state supreme court denied certiorari on May 30, 2002. J.A. 259.

*Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and thus part of the clearly established law for purposes of section 2254(d)(1) when the state court issued its decision. *Ante* at 705; *ante* at 716 (Motz, J., concurring). Neither the majority opinion nor the separate concurrence is even remotely convincing that *Flores–Ortega* was dictated by prior precedent and thus not a new rule under *Teague.*

### A.

In order to grant Frazer's habeas petition on the basis of *Flores–Ortega,* the majority must overcome two independent bars to relief—that imposed by section 2254(d)(1) and that imposed by *Teague.* Section 2254(d)(1) bars relief unless the PCR court's judgment "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Even if *Flores–Ortega* were clearly established federal law at the time the PCR court rendered its judgment, and even if the PCR court unreasonably applied it, thus overcoming the AEDPA bar, *Teague*—which held that federal courts will not apply new rules of constitutional law retroactively to cases on collateral review—*independently* prevents granting the writ on the basis of *Flores–Ortega* because, as explained *infra,* that case announced a new rule of constitutional law. *See Horn v. Banks,* 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) (per curiam) ("While it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard, or that AEDPA relieves courts from the responsibility of addressing properly raised *Teague* arguments.").[2]

*Teague* would not bar relief on the basis of *Flores–Ortega* if the rule announced in *Flores–Ortega* had been an old rule of constitutional law. Old rules of constitutional law are those that were "*dictated* by precedent existing at the time the defendant's conviction became final." *See Teague,* 489 U.S. at 301, 109 S.Ct. 1060. A rule is not dictated by precedent—and is therefore a new rule of constitutional law—if, prior to its announcement, its existence was "susceptible to debate among reasonable minds." *See Butler v. McKellar,* 494 U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). In other words, a rule is an old rule of constitutional law only if all reasonable jurists would have agreed that it existed prior to its announcement.

The majority correctly recognizes that if *Flores–Ortega* announced a new rule of constitutional law, *Teague* would bar relief. The majority incorrectly concludes, however, that *Flores–Ortega* was dictated by prior precedent and was therefore an old rule. *And it is able to so hold in large part because it does not even attempt to show that all reasonable jurists would have anticipated the outcome of that case.*

2. For an example of how *Teague* can independently bar habeas relief even when AEDPA is not a bar, assume the following sequence of events: First, the petitioner's conviction becomes final. Second, the Supreme Court issues a case announcing a new rule of constitutional law. Third, the PCR court unreasonably applies that newly announced rule to the petitioner's case. In such a case, section 2254(d)(1) would not bar relief—the new rule of constitutional law was clearly established at the time of the PCR court's decision and was unreasonably applied. *Teague,* however, would prevent the federal habeas court from issuing the writ on the basis of the newly announced rule because the petitioner's conviction became final before the new rule was announced.

720

Instead of conducting this proper inquiry, the majority merely sets about to show that in *Flores–Ortega* "the Supreme Court relied exclusively on the principles announced in *Strickland* and other cases defining the role of counsel in the appellate process," *ante* at 705, a task that the majority mistakenly believes establishes that *Flores–Ortega* was dictated by *Strickland* and other Supreme Court precedents existing at the time Frazer's conviction became final and that *Flores–Ortega* was therefore an old rule. Of course, to establish that the Supreme Court relied exclusively on the principles of prior cases in reaching the rule of *Flores–Ortega* is not at all to establish that those cases *dictated* that rule, that is, that all reasonable jurists would have agreed that those precedents led inexorably to *Flores–Ortega*.

Apart from this erroneous "relied-exclusively-on" test, the majority's only other analysis of whether *Flores–Ortega* was dictated by precedent remarkably consists solely of the bald assertion that because the decision to appeal is important, and *Strickland* stated in dicta that counsel has a duty to consult with the defendant on important decisions, *Strickland* dictated the rule of *Flores–Ortega*. This analysis is entirely unconvincing on its own terms and, it should go without saying, does not

even remotely approximate the proper *Teague* inquiry.[3]

**B.**

Having improperly conducted and answered the *Teague* inquiry, the majority then compounds the confusion by importing its erroneous *Teague* conclusion into its AEDPA analysis, deciding that because *Flores–Ortega* is an old rule of constitutional law under *Teague*, "[n]either *Teague* nor § 2254(d) forecloses an examination of Frazer's entitlement to habeas relief." *See ante* at 706. In so doing, the majority fails completely to recognize that, as the Supreme Court has emphasized, "the AEDPA and *Teague* inquiries are distinct." *Horn*, 536 U.S. at 272, 122 S.Ct. 2147. The *Teague* new-rule inquiry requires us to ask whether a rule that the petitioner seeks to benefit from was dictated by precedent *at the time the petitioner's conviction became final.* Section 2254(d)(1), in contrast, requires us to ask whether the rule that the PCR court allegedly applied unreasonably was clearly established *at the time of the PCR court's decision.*

The majority relies on the Supreme Court's statement in *Williams v. Taylor* that there is a "slight connection" between

**3.** In one last attempt to defend its holding that *Flores–Ortega* was an old rule, the majority notes that *Flores–Ortega* was decided by the Supreme Court on collateral review. From this fact, the majority infers, based on *Teague*, that the Supreme Court must have concluded that the rule set forth in *Flores–Ortega* was an old rule. *See ante* at 705. This is a fair debating point, but no more than that, and certainly not one upon which an appellate court would rely (as, in fairness to the majority, it appears to understand).

In any event, it is far more likely, if not probable, that the Court instead considered the *Teague* issue waived, as the state did not raise *Teague* in its brief on the merits before the Court. If the Court did not consider the

argument waived for this reason, it most certainly never gave a moment's thought to whether it was announcing a new rule. But if any inference is to be drawn from the Court's complete silence, it is the opposite one from that drawn by the majority, given that the Court's test for determining whether a rule is new plainly dictates that the rule announced in *Flores–Ortega* is new, not old, contrary to the majority's unpersuasive contention. In the absence of any statement by the Court as to the matter, as in *Flores–Ortega*, the default rule that new rules will not be announced on habeas would almost certainly yield to the actual test for determining whether a rule is or is not new.

the phrase "clearly established Federal law" in section 2254(d)(1) and *Teague,* namely that "*whatever* would qualify as an old rule under our *Teague* jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under § 2254(d)(1)." *Ante* at 706 (quoting *Williams,* 529 U.S. at 412, 120 S.Ct. 1495) (emphasis added by majority). It intends this "connection" to explain (and justify) its focus on *Teague,* as opposed to a focus on the actual standard of section 2254(d)(1). *But to reason in this fashion is to read out of Teague and section 2254 the critically different temporal limitations of these "distinct" inquiries.*[4]

A correctly reasoned opinion would address head-on the relevant question under AEDPA of whether the rule announced in *Flores–Ortega* was clearly established *at the time of the state PCR court's decision,* that is, whether *at the time of the state PCR court's decision* all reasonable jurists would have agreed that the rule of *Flores–Ortega* was already extant. (In contrast, the corresponding, but different, inquiry under *Teague* is whether *at the time the*

*petitioner's conviction became final* all reasonable jurists would have agreed as to the required outcome of *Flores–Ortega.*). But, as noted above, the majority never asks the crucial question whether, at the time of the state PCR court's decision, all reasonable jurists would have anticipated *Flores–Ortega.* Needless to say, as a consequence, the majority's analysis under AEDPA is demonstrably flawed.

Had the majority undertaken the proper analysis under section 2254, it would have been required to hold, for the reasons explained *infra,* that a reasonable jurist *clearly* could have read *Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), and *Peguero v. United States,* 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999), as consistent with *Carey v. Leverette,* 605 F.2d 745 (4th Cir. 1979), and as authority for the conclusion that Frazer's claim was defeated by his failure to request that his attorney appeal.[5] Such a jurist could thus have reasonably failed to anticipate the holding of *Flores–Ortega,* as indeed the state court did in this case.[6]

4. Because of the temporal difference between the two inquiries, it is clear that not everything that qualifies as clearly established federal law under AEDPA qualifies as an old rule under *Teague.* For example, if *Flores–Ortega* had been announced between the time Frazer's conviction became final and the date of the PCR court's judgment, it would have been clearly established federal law for purposes of AEDPA review but a new rule under *Teague.* I believe that it is likewise clear that not everything that is an old rule under *Teague* is clearly established for purposes of AEDPA. But even accepting the Supreme Court's contrary observation in *Williams v. Taylor,* such does nothing to save the majority's bootstrapped AEDPA analysis given the flaws in its *Teague* analysis detailed above. Because the majority did not, and cannot, properly show that *Flores–Ortega* was an old rule of constitutional law, the *Williams* bootstrap is unavailable.

5. The concurrence contends that *Carey* is *inconsistent* with *Strickland* because it imposes a bright line rule. But even the concurrence must recognize that what *Carey* establishes is really a *presumption,* not a per se rule. *Ante* at 717 (Motz, J., concurring) ("*Carey* holds that *in most cases (i.e. 'absent extraordinary circumstances')* an attorney need not ..." (emphasis added)). And the concurrence cannot contend that a mere *presumption,* even if it establishes bright lines, is inconsistent with *Strickland,* as it also contends that the rule in *Flores–Ortega,* which is itself a presumption, is *compelled* by *Strickland. Ante* at 717 (Motz, J., concurring) (admitting implicitly that the rule in *Flores–Ortega* is also a presumption because it applies only "in the vast majority of cases").

6. That we applied *Flores–Ortega* in *Hudson v. Hunt,* 235 F.3d 892 (4th Cir.2000) does not imply that we held that a reasonable jurist

Despite the protestations of the majority and concurrence that *Flores–Ortega* follows unavoidably from *Strickland* and *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), neither opinion is able to offer *any* explanation, much less a plausible one, as to why a reasonable jurist would not have relied directly on *Rodriquez* and *Peguero*, which address this precise context. Indeed, the majority does not even as much as cite *Peguero* and it mentions *Rodriquez* only in passing. And the *only* reference to either in Judge Motz's concurrence is a brief recognition that both cases are cited in *Flores–Ortega.*[7]

Because the outcome of *Flores–Ortega* was undoubtedly in question prior to the issuance of that case, *Flores–Ortega* was *neither* old law *nor* clearly established federal law, as determined by the Supreme Court of the United States. As a consequence of the fact that Flores–Ortega was not clearly established federal law until the day it was issued, that case cannot be applied to Frazer's claims—at least not consistent with section 2254(d)(1).

## C.

Like the majority, the concurrence attempts to defend reliance upon *Flores–Ortega* on the grounds that *Flores–Ortega* is old law and thus was clearly established at the time of the state-court decision. *Ante* at 715 – 716 (Motz, J., concurring).

However, for its part, the concurrence attempts to redefine entirely the elements of an old rule under *Teague.* It does so by urging that the category of old rules includes first, all cases which "simply 'illustrat[e] the proper application' of" prior precedent, *ante* at 714 (Motz, J., concurring), and second, all later cases that interpret *Strickland, ante* at 714 (Motz, J., concurring).

In support of its first definition of an old rule, the concurrence invokes the Supreme Court's statement that *Williams v. Taylor* could be applied to the petitioner's habeas claim in *Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), even though *Williams* post-dated the state court's rejection of Wiggins' claim, because the *Wiggins* Court concluded that the *Williams* Court had "*made no new law* in resolving Williams' ineffectiveness claim." *Id.* at 522, 123 S.Ct. 2527 (emphasis added). The concurrence characterizes the Court's application of *Williams* in *Wiggins* as a conclusion that the Court "could consider a case issued *after* the relevant state court decision because its recently decided case simply 'illustrat[ed] the proper application' of *Strickland*." *Ante* at 714 (Motz, J., concurring) (emphasis and alteration in majority).

But the Supreme Court does not determine whether a rule is an old rule by deciding that it will "simply illustrate the

---

pre-*Flores-Ortega* would have been required to anticipate *Flores–Ortega.* In *Hudson,* we indeed applied *Flores–Ortega* to Hudson's claims, even though the state court had denied post-conviction relief before *Flores-Ortega* was issued. *See id.* at 895–97. However, the question of whether AEDPA barred relief because *Flores–Ortega* was not a part of the clearly established federal law was not presented to the court in that case, because state court had dismissed Hudson's claims on procedural grounds, not on the merits. We thus reviewed the claims de novo, rather than in accordance with AEDPA's restrictive stan-

dard of review. *Id.* at 895. We did not raise *Teague sua sponte* in *Hudson,* and thus also reached no holding that *Flores–Ortega* could be applied consistent with *Teague.*

**7.** That the Supreme Court did not suggest that *Rodriquez* or *Peguero* was *inconsistent* with *Flores–Ortega* of course carries no corresponding implication that a reasonable jurist reading those cases and *Strickland* would have necessarily recognized that the outcome of *Flores-Ortega* was the only way to reconcile the two lines of authority.

proper application" of an earlier case. If this were the test, virtually *everything* would be an old rule, because the Supreme Court rarely, if ever, decides a case without properly applying an earlier case. Such a broad view of old rules ignores *Teague's* focus on the importance of the finality of criminal judgments. *Teague,* 489 U.S. at 309, 109 S.Ct. 1060.

Instead, the Court has held—and reaffirmed repeatedly—that a rule is *new* when "the result [it reaches] was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. 1060. This definition of a new rule is meant to "validate[ ] reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *O'Dell v. Netherland,* 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). The focus of the old-rule inquiry is thus decidedly *not* on whether a case "illustrates the proper application" of or otherwise relies on previously decided cases; the focus of the inquiry is on whether a case applies such prior cases *in such a manner that no reasonable jurist could have disagreed about the result of the later-decided case*—a far narrower inquiry.

The concurrence's second justification for characterizing the holding of *Flores-Ortega* as an old rule is its implicit assertion that *Williams* holds that virtually all cases interpreting the two-prong *Strickland* standard set forth old rules. *See ante* at 714 (Motz, J., concurring)("Rather, the Court has directed that 'the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims.' ")(quoting *Williams,* 529 U.S. at 391, 120 S.Ct. 1495). But *Williams* provides no support for such an assertion. Instead, *Williams* holds only that *Strickland itself* is clearly established law even though *Strickland* requires a case-by-case

inquiry, and thus that a state court's application of *Strickland* could entitle a habeas petitioner to relief *if the state court decision was contrary to or an unreasonable application of Strickland. Williams,* 529 U.S. at 390–91, 120 S.Ct. 1495. The language about *Strickland* "resolving virtually all ineffective-assistance-of-counsel claims," which the concurrence takes out of context from *Williams,* provides in full:

> The Virginia Supreme Court erred in holding that our decision in *Lockhart v. Fretwell* [, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993),] modified or in some way supplanted the rule set down in *Strickland.* It is true that while the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims, there are situations in which the overriding focus on fundamental fairness may affect the analysis.

*Id.* at 391, 120 S.Ct. 1495. In context, it is clear that this language does *not* mean, as the concurrence suggests, *ante* at 714 (Motz, J., concurring), that a case involving ineffective assistance is necessarily an old rule under *Strickland* because *Strickland* resolves "virtually all" such claims, but rather that it is only in rare circumstances that a court must have an "overriding focus" on a *different* legal test altogether than the one set forth in *Strickland, i.e.,* whether the proceeding is consistent with fundamental fairness. Contrary to Judge Motz's implication, this statement thus emphatically does *not* hold that, for *every one* of the Court's post-*Strickland* ineffective assistance cases, *no reasonable jurist* could have disagreed with the result—as would be required for all such cases to constitute old law under *Teague.*

Judge Motz, in attempted rejoinder to this obvious point, rejoins not at all. *Ante* at 714, n. 1. That *Strickland* resolves the

vast majority of ineffective assistance claims says nothing whatsoever as to whether a particular application of *Strickland* constitutes a new rule or not. Indeed, Judge Motz reveals her own misunderstanding of the new-rule inquiry by noting emphatically (as if it were the inquiry) that *Strickland* "guides" most ineffective assistance claims. *Ante* at 714, n. 1. Of course, the new-rule inquiry is not whether *Strickland* "guides" the ineffective assistance analysis, but, rather, whether *Strickland* dictates the resolution of a particular ineffective assistance claim. Judge Motz attempts to salvage her position by hastily asserting that the *Strickland* analysis that generally guides ineffective assistance claims actually dictated the result in *Flores–Ortega*. *See ante* at 714, n. 1. But this is mere assertion; she does not even attempt to demonstrate that no reasonable jurist would have disagreed with the result in *Flores–Ortega*.

The Court's statement in *Wiggins* that *Williams* set forth an old rule thus cannot be read as a holding that a case sets forth an old rule whenever it "simply applies" prior precedent or interprets *Strickland*, as the concurrence would have us believe. Instead, under the Supreme Court's definition of an old rule, the conclusion in *Wiggins* that *Williams* was an old rule must have represented a belief by the Court that it would have been unreasonable for a jurist to fail to recognize that the result in *Williams* was dictated by precedent. *See Teague*, 489 U.S. at 301, 109 S.Ct. 1060. An interpretation of *Strickland* that was contrary to *Williams* would thus have failed to qualify as a "reasonable, good-faith interpretation" that *Teague* recognized as deserving of deference. *See O'Dell*, 521 U.S. at 156, 117 S.Ct. 1969. This reading of *Wiggins* is necessary for *Wiggins* to be consistent with the Court's holding, both pre— and post-*Wiggins*, that the relevant law under section 2254(d)(1) is

that which is clearly established *at the time of the relevant state-court decision*. *See Williams*, 529 U.S. at 412, 120 S.Ct. 1495; *Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004). By declaring that *Williams* set forth an old rule, the Supreme Court indicated that all reasonable jurists would have agreed *even prior to the issuance of Williams* that *Williams* should be decided the way that it was. Thus, the Court's application of *Williams* in *Wiggins* was not an unexplained departure from the Supreme Court's repeated explanations of the section 2254(d)(1) standard; rather, it was simply a further application of the Court's conclusion that a rule of law that is dictated by precedent is clearly established when that precedent is issued, even if that is before the rule of law is explicitly stated. *See Williams*, 529 U.S. at 412, 120 S.Ct. 1495.

### D.

Betraying its discomfort with its obvious reliance on *Flores–Ortega*, the majority begins its opinion with a revealingly abridged statement of its holding, that "*Strickland* ... and its progeny" were unreasonably applied, *ante* at 701, and, in like fashion, it prefaces its ultimate analysis of Frazer's claim with the statement that "the state PCR court's decision constituted an unreasonable application of *Strickland*," *ante* at 706. It is clear, however, that the majority does not hold (or even believe) that *Strickland* alone is sufficient or, for that matter, even that *Strickland* dictated *Flores–Ortega*. The majority opinion cites *Flores–Ortega* more than twice as often as it does *Strickland*, and cites *Flores–Ortega* almost exclusively in its actual analysis of Frazer's claim. *See, e.g., ante* at 706 – 708 (relying, in holding that Frazer's counsel failed the performance prong, on *Frazer–Ortega* for the proposition that "[c]ounsel's

obligation to consult ... is distinct from [his] duty to inform";) *ante* at 708–712 (considering "whether Frazer can satisfy the requirements that the *Flores–Ortega* Court distilled from *Strickland*" and proceeding to analyze Frazer's claim of prejudice under *Flores–Ortega's* two-part test); *ante* at 711 (concluding that counsel had failed to meet "his obligations under *Strickland* and *Flores–Ortega*"); *ante* at 712 (claiming that "Frazer need only demonstrate an *interest* in appealing" in order to "show prejudice under *Flores–Ortega*"); *ante* at 712 (stating that "in light of *Strickland* and *Flores–Ortega,* Frazer's counsel had an obligation to consult with him regarding an appeal"). In fact, the majority virtually admits that *Flores–Ortega* is essential to its holding when it concludes that "[b]ecause the dissent's analysis of the merits of Frazer's claim is predicated on its conclusion that *Flores–Ortega* does not apply, its analysis is largely irrelevant." *Ante* at 712. If *Flores–Ortega* was not necessary to the majority's holding, then the analysis based on Supreme Court precedent pre-dating *Flores–Ortega* that this dissent conducts would not only be relevant, but of course, would be the analysis the majority should be conducting as well.

That the majority does not believe that it can grant relief without relying on *Flores–Ortega* is further confirmed by the fact that it even raises *Teague* at all. If the majority actually believed that the PCR court's judgment was an unreasonable application of *Strickland* independent of *Flores–Ortega,* then its analysis of whether *Flores–Ortega* announced a new rule barred by *Teague* would be utterly irrelevant because the PCR court's unreasonable application of *Strickland* would *alone* justify issuance of the writ. *Strickland* was unquestionably clearly established federal law at the time of the PCR court's decision for purposes of section 2254(d)(1), and it was just as certainly an old rule of constitutional law under *Teague* at the time Frazer's conviction became final. It is only if *Flores–Ortega* is necessary to a conclusion that the state court unreasonably applied clearly established federal law that an analysis of whether *Flores–Ortega* is a new rule under *Teague* is apt because, as explained above, in order to grant the writ of habeas corpus on the basis of *Flores–Ortega* the majority must conclude that that decision is not *Teague*—barred.

The problem for the majority on this score is that it meets itself coming around. If *Flores–Ortega* is necessary to a conclusion that the PCR court unreasonably applied clearly established federal law, then it follows that *Flores–Ortega* was *not* dictated by *Strickland*—contrary to the majority's separate conclusion. For if *Flores–Ortega* were dictated by *Strickland,* then the state court judgment would have been unreasonable under *Strickland,* without resort to *Flores–Ortega.*

The majority understands well that *Strickland* did not dictate *Flores–Ortega,* as evident from the myriad of formulations that it invokes in explanation of the relationship between *Strickland* and *Flores–Ortega*—variously asserting that *Flores–Ortega* "crystalize[d]," *ante* at 704, "distill[ed]," *ante* at 705, 709 "elaborat[ed]," *ante* at 706, "reinforced," *ante* at 707, n. 8, and "synthesi[zed]," *ante* at 709, *Strickland.* Many, if not all, of these formulations connote addition to or change from *Strickland*—a connotation inconsistent with a conclusion that all reasonable jurists would have agreed that the rule of *Flores–Ortega* existed prior to its announcement.

In the end, for the reasons explained, it is transparent that the majority cannot establish that *Strickland* dictated *Flores–*

*Ortega* and that it rests its grant of the writ instead on the conclusion that the state PCR court unreasonably applied *Flores–Ortega*—a precedent that did not even exist at the time that court issued its judgment.

### E.

The majority's reliance upon *Flores–Ortega* would at least be defensible if the state supreme court's discretionary denial of certiorari, not the state PCR court's decision, were the relevant decision for our review under AEDPA. For *Flores–Ortega* did pre-date *that* decision. However, the majority correctly acknowledges, as it must, that the state PCR court decision is the relevant state court decision for purposes of section 2254(d). *See ante* at 706, n. 7.

Under no circumstance can a discretionary denial of certiorari be relevant to the inquiry mandated by section 2254(d). Only the pre-*Flores-Ortega* opinion of the PCR court, and *not* the letter denying discretionary review, can be said to have been an "adjudication of the claim that resulted in a decision" within the meaning of section 2254(d).

The South Carolina Supreme Court did not address the merits of Frazer's claims *at all*. Rather, the South Carolina Supreme Court entered a letter order on May 30, 2002, stating that Frazer's "Petition for Writ of Certiorari [was] Denied." J.A. 259; *see also* Br. of Appellee at 4 (describing Frazer's petition for writ of certiorari as being "summarily denied *without consideration on the merits*") (emphasis added). In South Carolina, "the denial of a petition for a writ of certiorari to the Court of Appeals does not dismiss or *decide* the underlying appeal; it simply determines that, as a matter of discretion, [the South Carolina Supreme Court] does not desire to review the decision of the

Court of Appeals." *State v. Rucker*, 321 S.C. 552, 471 S.E.2d 145, 145 (1996) (emphasis added); *see also Austin v. South Carolina*, 305 S.C. 453, 409 S.E.2d 395, 396 (1991) (reaching the same conclusion with respect to the South Carolina Supreme Court's refusal to review the denial of post-conviction relief).

The language of section 2254, the Supreme Court's interpretation of that language, and plain common sense all preclude the conclusion that such a discretionary denial should be examined by a federal habeas court. Section 2254(d) provides, in relevant part, that

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits* in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d) (emphasis added). The Supreme Court has defined the phrase "clearly established Federal law" as including "the holdings, as opposed to the dicta, of this Court's decisions *as of the time of the relevant state-court decision*." *Yarborough*, 124 S.Ct. at 2147 (emphasis added)(quoting *Williams*, 529 U.S. at 412, 120 S.Ct. 1495). In light of the statutory language, it is obvious that *only* the state PCR court's adjudication, and *not* the South Carolina Supreme Court's letter denying discretionary review, can constitute the "relevant state-court decision" under *Yarborough*. The only plausible reading of section 2254 is that "the adjudication of the claim" refers to the "adjudicat[ion] on the merits" that must be present for the statute to be implicated. Because the

state supreme court's letter denying review was *neither* an "adjudication" *nor* "on the merits," it cannot be the relevant adjudication for consideration under the statute. The final "adjudication on the merits" was performed by the state PCR court, and it is only *this* adjudication that we must examine to determine whether it "resulted in a decision" that is not entitled to deference.

In fact, we have previously taken precisely this approach. In *Bacon v. Lee,* 225 F.3d 470 (4th Cir.2000), the state MAR court summarily denied a habeas petitioner's claims. *Id.* at 475. The North Carolina Supreme Court then denied certiorari. *Id.* In setting forth our standard of review, we did not mention the denial of certiorari, instead applying section 2254(d)(1) *only* to the decision of the MAR court. *Id.* at 478.

Nor could we reasonably adopt any other interpretation of the statute. There are only two possible means by which one could reach the conclusion that the denial of discretionary review is an "adjudication on the merits"—and neither is supportable. On the one hand, one might treat the denial of discretionary review as just what it is—a discretionary decision to deny further review—and then inquire whether the state court's *failure to act* was an unreasonable application of federal law. But with such treatment, there would *never* be any grounds for relief to a petitioner under the deferential standards of section 2254(d)(1), because the exercise of effectively unlimited discretion simply to decline to review a particular case, with no indication that the discretion was exercised for any reason barred by federal law, can *never* be "contrary to" or an "unreasonable application of" *federal* law—for the simple reason that it does not purport to apply federal law *at all.* Just as the United States Supreme Court itself refuses to re-

view the vast majority of cases brought before it in order to keep its business "within manageable proportions," so also state supreme courts are entitled to circumscribe their review in a purely discretionary fashion. *See Brown v. Allen,* 344 U.S. 443, 491, 73 S.Ct. 397, 97 L.Ed. 469 (1953)(opinion of Frankfurter, J.); *Felton v. Barnett,* 912 F.2d 92, 95 (4th Cir.1990). Adopting the view that the denial of certiorari is the relevant state-court decision for our review would mean that, absent exceptional circumstances (as, for example, if the state court were shown to exercise its discretion in an unconstitutional manner), anytime the state's highest court denied discretionary review, the petitioner would be ineligible for relief in federal court. Thus, if faithfully applied, this interpretation would *entirely* insulate from review many decisions of the state courts; such a result cannot be correct.

Alternatively, one could instead mischaracterize the state court's denial of discretionary review as a summary affirmance that adopted and ratified the reasoning of the lower court. *See McHone v. Polk,* 392 F.3d 691, 704 n. 5 (4th Cir.2004)(holding that the state supreme court's summary adjudication of habeas petitioner's claims "left intact the reasoning of the [lower] court, and that the state is accordingly entitled to the benefit of the more thorough treatment of petitioner's *Strickland* claims in that court"). Such disregard of the state court's characterization of its own order, far from enforcing the principle of comity that AEDPA respects, instead undermines that principle by giving no effect to the South Carolina Supreme Court's holdings respecting the import of a denial of discretionary review. That a petitioner is required to *seek* discretionary review in the state's highest court in order to exhaust his state remedies serves the interests of comity because it gives the state's highest court the opportunity, *if it so de-*

*sires,* to reconsider the intermediate appellate court's disposition of the claim. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). This requirement precludes a petitioner from effectively circumventing the state court in favor of a federal forum. In contrast, an interpretation treating a discretionary denial of certiorari as the "relevant state-court decision" would frustrate comity by *disregarding* the state's decision not to grant discretionary review, and thus, like a petitioner who fails to seek discretionary review, would fail utterly to respect the state court's right of "selectively choosing to hear only those cases which seem *to it* to come within its primary purposes and functions." *See Moffitt v. Ross,* 483 F.2d 650, 653 (4th Cir.1973) (emphasis added). In so doing, it effectively *forces* state supreme courts to *grant* review and decide the claim on the merits in any case where a relevant intervening Supreme Court decision has been decided, or face having the *reasonable* decisions of its lower courts overturned by the federal habeas courts. This is just the sort of intrusion onto state-court systems in violation of comity that AEDPA was designed to prevent.

*Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), and *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), which discussed the relevance of the actions of the last state court involved in a petitioner's habeas proceedings, confirm that a discretionary decision by a state supreme court is *not* the last state court judgment for the purposes of federal habeas review.

In *Coleman,* the Supreme Court directed federal habeas courts to look to "the decision of the last state court to which the petitioner presented his federal claims" to determine whether a state court decision rests on federal law, rather than on an independent and adequate state ground. *Coleman,* 501 U.S. at 732–35, 111 S.Ct. 2546. This directive to look to the decision of the "last state court" merely reiterated the Court's previous holding in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). *See id.* at 263, 109 S.Ct. 1038 ("[P]rocedural default does not bar consideration of a federal claim on either direct or habeas review unless the *last state court* rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.")(emphasis added). Our circuit has held that "[t]he denial of the petition for certiorari was not ... the last state court judgment" for purposes of applying *Harris,* because "the denial of such a writ is not a judgment but is simply a refusal to hear the appeal." *Felton,* 912 F.2d at 94; *see also Smith v. Dixon,* 14 F.3d 956, 964 n. 4 (4th Cir.1994) (same).[8] And *Felton* is plainly correct; the state court's unexplained denial of discretionary review cannot reasonably be read to impart any view on whether an adequate and independent state ground bars federal court review. *See Goodwin v. Collins,* 910 F.2d 185, 187 (5th Cir.1990). *Felton* also virtually compels the directly analogous rule that a

---

**8.** Although *Felton* and *Smith* interpret a denial of a petition for certiorari by the North Carolina Supreme Court, rather than the South Carolina Supreme Court, the South Carolina Supreme Court's holding that its denials of certiorari are not judgments on the merits of the case brings it within the reach of the rule in *Felton* and *Smith.*

denial of discretionary review cannot reasonably be said to represent a judgment by the state court that no recent Supreme Court precedent requires relief.

Indeed, the Supreme Court has recognized that the federal courts are "in accord" with *Felton's* holding that a discretionary denial of certiorari does not constitute the last state court judgment for purposes of determining the applicability of a state procedural bar. *Ylst*, 501 U.S. at 802 n. 2, 111 S.Ct. 2590 (citing *Goodwin*, 910 F.2d at 187 ("[T]he *Harris* court's reference to 'the last state court rendering a judgment in the case'" references the "state intermediate appellate court [that] renders a decision," not "the highest state court [that] simply denies discretionary review."); and *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir.1990)("Unexplained affirmances or denials of discretionary review do not retract a state-law basis of decision already given.")); *see also McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir.1991). Furthermore, *Ylst* cannot be interpreted to have concluded that a discretionary denial of certiorari adopts the reasoning of the last explained decision below, because the Court assumed that the California Supreme Court lacked "any discretion not to entertain habeas corpus petitions." *Ylst*, 501 U.S. at 802 n. 2, 111 S.Ct. 2590.

Because the only relevant state-court *decision* is the state PCR court's decision, and because *Flores–Ortega* was not decided at the time of the PCR court's decision, the majority's reliance on *Flores–Ortega* flouts the clear statutory mandate of section 2254(d). *Flores–Ortega* is simply irrelevant to the question presented to us.

## II.

Unable to rely upon *Flores–Ortega*, the majority's review of the *merits* of Frazer's case violates the strict limits AEDPA places on our review of state court judgments. Rather than deferring to the factual conclusions of the state court, the majority accepts as true Frazer's representations to the state PCR court, even though they were rejected by that court. The majority then utterly fails to address the two most relevant Supreme Court cases—or indeed, to address *any* Supreme Court case other than *Flores–Ortega* at any length—in reaching its erroneous conclusion that the state holdings both with respect to the performance and the prejudice prongs of *Strickland* were unreasonable.

## A.

The majority disregards the stringent limitations AEDPA places on the ability of the federal courts to second-guess the factual conclusions of state habeas courts. Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The state PCR court, which, unlike the district court and the majority, had the benefit of a full evidentiary hearing in which both Frazer and his counsel testified, held that "[t]here [is] nothing in the record or the testimony at this hearing to indicate that the Applicant conveyed to his trial attorney a desire to appeal until it was too late." J.A. 209–10. Despite this conclusion, both the majority and the district court conclude that Frazer expressed at least an interest in appealing. *Ante* at 709, 712; J.A. 114–15. But neither the majority nor the district court even purports to hold that Frazer has met his burden of disputing the state court's finding by clear and convincing evidence, or indeed even addresses the impact of the

state court's factual finding on this case. Nor could they reasonably conclude that Frazer has met his burden; the state court expressly refused to credit Frazer's testimony at points during the hearing, J.A. 208, and Frazer's was the only testimony that supported the conclusion that his trial counsel ever agreed to file an appeal. J.A. 177–78. In fact, Frazer's trial counsel expressly *denied* that he and Frazer had ever talked about appealing the sentence, and instead indicated only that he was asked to "see[ ] about having time run together," and that he did so by making an oral motion for reconsideration to the trial court. J.A. 189.

### B.

The state PCR court was thus faced only with evaluating the claim that Frazer's counsel provided ineffective assistance by failing to appeal after Frazer, who had unquestionably been advised of his right to appeal by the plea affidavit, J.A. 143, nonetheless failed to request that his counsel appeal. Because the state court correctly identified *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as the law governing claims of ineffective assistance of counsel, we may only grant relief if the state court's decision was an unreasonable application of *Strickland* and other clearly established Supreme Court precedent.

It is clear that the state court's conclusion that Frazer was not entitled to relief on such facts was an eminently reasonable application of the *relevant* Supreme Court law, *i.e.,* that Supreme Court law existing in September 1999. Under *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Here, Frazer pled guilty, which, as the majority recognizes, at least waives all "nonjurisdictional defects and defenses, in-cluding claims of violation of constitutional rights prior to the plea." *Rivers v. Strickland,* 264 S.C. 121, 213 S.E.2d 97, 98 (1975); *ante* at 709–710. The limited scope of appealable issues of course renders defendants who plead guilty less likely to prevail on appeal and thus presumably less likely to desire an appeal. Moreover, as discussed above, Frazer did not ask his counsel to seek an appeal. In these circumstances, it was not unreasonable for counsel to fail to do so. *See Carey v. Leverette,* 605 F.2d 745, 746 (4th Cir.1979) (holding that there is generally "no constitutional requirement that defendants must always be informed of their right to appeal following a guilty plea.").

Supreme Court precedent specific to the context of a petitioner's allegation that he was wrongfully denied an appeal also requires the conclusion that it would not have been unreasonable for a state court pre-*Flores-Ortega* to determine that Frazer's failure to request an appeal, when he knew of his right to appeal, was dispositive. In *Rodriquez v. United States,* 395 U.S. 327, 329, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), the Supreme Court held that a client who *requests* that his lawyer file an appeal and whose lawyer fails to do so is entitled to relief in the form of a belated appeal, even if he is unable to disclose what claims he would have raised or demonstrate a likelihood of success on those claims. *See id.* at 329, 89 S.Ct. 1715; *see also Flores–Ortega,* 528 U.S. at 477, 120 S.Ct. 1029.

The importance of the client's *request* for an appeal to the holding in *Rodriquez* was confirmed in *Peguero v. United States,* 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999). In *Peguero,* the habeas petitioner alleged that he was entitled to relief because his counsel had failed to file a notice of appeal pursuant to his request and because the district court had

failed to inform him of his right to appeal, as required by Federal Rule of Criminal Procedure 32(a)(2). *Id.* at 25, 119 S.Ct. 961. The district court made factual findings that the court had failed to notify Peguero of his right to appeal, but that Peguero had already been aware of his right to appeal, and that Peguero had told his trial counsel that he did *not* wish to appeal. *Id.* The Supreme Court reviewed only Peguero's claim under Rule 32(a)(2) and, because of Peguero's awareness of his right to appeal, refused to infer prejudice from the trial court's failure to inform Peguero of that right. *Id.* at 28, 119 S.Ct. 961. The Court concluded that *Rodriquez,* which had relied in part on the trial court's failure to inform Rodriquez of his right to appeal, was "not implicated here because of the District Court's factual finding that petitioner did not request an appeal." *Id.*

Although *Peguero* did not address an ineffective assistance of counsel claim, a pre-*Flores-Ortega* court could reasonably have concluded that *Peguero* indicated that petitioner's express request for an appeal was crucial to the holding in *Rodriquez* and thus that *Rodriquez* should not be extended to circumstances where petitioner failed to request an appeal. Frazer, as noted above and contrary to the majority's assumption, made no such request. Considering *Rodriquez* and *Peguero* alone, then, the state court could reasonably have concluded that a defendant must at least either request an appeal or be unaware of his right to appeal before counsel has an obligation to pursue an appeal. Such a conclusion is particularly reasonable in light of the deferential review of counsel's performance required by *Strickland* and this court's conclusion in *Carey* that no consultation regarding an appeal after a

guilty plea is necessary, absent extraordinary circumstances.

The majority fails to analyze—or even cite—*Peguero,* and it mentions *Rodriquez* only in passing. Its judgment rests almost entirely on its conclusion that the state court's decision, as "made abundantly clear by *Flores-Ortega,*" was "objectively unreasonable in light of the dictates of *Strickland* "; according to the majority, the state court "unreasonably applied *Strickland* and its progeny," by which it of course means *Flores-Ortega. Ante* at 708. That the majority's holding necessarily rests on *Flores-Ortega* is confirmed by its extensive *Teague* analysis, an analysis in which it engages solely to justify its ultimate reliance on *Flores-Ortega.* Besides this ill-conceived reliance on *Flores-Ortega,* the majority's discussion of the merits of Frazer's case makes only a fleeting reference to relevant Supreme Court law, in the form of its conclusion that *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and *Strickland* render the PCR court's reliance on our decision in *Carey v. Leverette* unreasonable.[9] *Ante* at 709. When examined at greater length, however, it is clear that neither of these cases renders the state's decision an unreasonable application of clearly established federal law.

As the majority notes, the Court in *Barnes* recognizes that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to ... take an appeal." *Barnes,* 463 U.S. at 751, 103 S.Ct. 3308. As should be abundantly clear, however, Frazer has in no sense been denied his authority to make a decision regarding his appeal. Frazer was aware that he had a right to appeal his guilty plea and sentence

**9.** The majority's almost-exclusive focus on *Flores-Ortega* confirms that the majority is aware that *only Flores-Ortega* provides a rule

of law that can even arguably afford Frazer relief. *See supra* at 13 (cataloging the majority's critical reliance on *Flores-Ortega* ).

and that he was required to do so within ten days of sentencing, but he neither filed a notice of appeal nor requested that his counsel do so. J.A. 143.

Nor does *Strickland's* general statement that counsel has a duty "to consult with the defendant on important decisions" suffice to render the state court's decision unreasonable. As an initial matter, that statement is dicta, as the case before the Supreme Court in *Strickland* did not pose the question of counsel's duty to consult with the defendant regarding an appeal (or indeed regarding any important decision). As noted above, only *holdings* of the Supreme Court, not dicta, constitute part of the "clearly established Federal law" for purposes of section 2254(d)(1).[10] *Yarborough*, 124 S.Ct. at 2147. In any event, the state court has more leeway in determining the application of a more general rule than the application of a very specific rule. *Id.* at 2149. *Strickland* emphasizes that "[n]o particular set of detailed rules for counsel's conduct" is appropriate, but rather that courts must consider "whether counsel's assistance was reasonable considering all the circumstances." 466 U.S. at 688–89, 104 S.Ct. 2052. The state court could reasonably conclude that counsel's duty to consult regarding whether petitioner should file an appeal does not arise until the petitioner indicates an interest in appealing. This is all the more true where, as here, the petitioner's plea of guilty limits the scope of issues available for appeal, and the only grounds he expressed to his lawyer for dissatisfaction depend on his unsupported allegation that the trial judge might have been prejudiced against him. *See Garrett v. State*, 320 S.C. 353, 465 S.E.2d 349, 350 (1995) (holding that a sentence is not excessive "if it is within statutory limitations and there are no facts supporting an allegation of prejudice against [the defendant]").

The state PCR court's decision that Frazer's counsel performed reasonably was thus not an unreasonable application of clearly established Supreme Court precedent, and the majority's conclusion to the contrary is a clear misapplication of the deferential standards of AEDPA review.

C.

Similarly, the state court reasonably concluded that Frazer had failed to prove that any "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. In *Rodriquez*, the Court proceeded on the assumption that the petitioner had requested that his counsel file an appeal, which "objectively indicated his intent to appeal," and thus demonstrated prejudice. *Flores–Ortega*, 528 U.S. at 485, 120 S.Ct. 1029 (citing *Rodriquez*, 395 U.S. at 328, 89 S.Ct. 1715). Here, in contrast, the facts are more akin to *Peguero*, where the Court concluded that petitioner's awareness of his right to appeal defeated the claim that he was prejudiced by the trial court's failure to inform him of that right. *Peguero*, 526 U.S. at 28–29, 119 S.Ct. 961. A court reconciling *Peguero* and *Rodriquez* could reasonably conclude that a petitioner does not suffer prejudice if he is not consulted regarding his wishes with respect to an appeal, so long as he is

---

**10.** The concurrence is obviously aware of the distinction between the holding of a case and dicta, *see ante* at 713 (Motz, J., concurring), but fails to give it any application, reasoning that the PCR court unreasonably applied *Strickland* because *"Strickland* makes clear that to be constitutionally effective, counsel must 'consult with the defendant on impor- tant decisions ...,'" *ante* at 717 (Motz, J., concurring). Whether a particular rule is "clearly" set forth in dicta or only arguably set forth in dicta is irrelevant for AEDPA purposes, given that the Supreme Court has made clear that *no* dicta is a part of the clearly established law under section 2254(d).

aware of his right to appeal and does not request assistance from his lawyer in exercising that right.

The mere fact that the *Flores–Ortega* Court notes that its prejudice standard "breaks no new ground" does not compel the contrary conclusion. Insofar as *Flores–Ortega* reaffirms the holding that the petitioner is not required to show that his appeal would have been successful, it indeed was clearly established law prior to *Flores–Ortega*.[11] *Flores–Ortega*, 528 U.S. at 484, 120 S.Ct. 1029; *Rodriquez*, 395 U.S. at 328, 89 S.Ct. 1715. However, prior to *Flores–Ortega*, it would have been reasonable to read *Peguero* to indicate that a petitioner who alleged that he was prejudiced because he was denied an appeal was required to demonstrate that he would have appealed, *and* that, as a matter of law, a petitioner who knew of his right to appeal but did not request an appeal could not make this showing.[12] To the extent that the *Flores–Ortega* Court held that a showing of "nonfrivolous grounds for appeal" can demonstrate prejudice *even if* a petitioner did not request an appeal, that

rule was simply not clearly established prior to *Flores–Ortega*.

## CONCLUSION

The majority can grant the writ of habeas corpus in this case only by grounding its conclusion that the state acted unreasonably on a Supreme Court precedent decided after the relevant state court judgment was entered and by failing to defer to either the factual or legal conclusions of the appropriate state court. I dissent. I would reverse the decision of the district court and remand for dismissal of Frazer's petition.

---

**11.** The concurrence's recognition that *Strickland* held that "prejudice is presumed" when counsel is denied altogether at a critical stage, *ante* at 715 (Motz, J., concurring), is thus correct. But it begs the more important question of whether counsel was denied altogether for an appeal or whether the petitioner simply failed to seek the assistance of counsel for an appeal; it is this question that *Flores–Ortega* provides a framework to answer.

**12.** Justice O'Connor's concurrence in *Peguero* could, pre-*Flores–Ortega*, have reasonably been read to support this conclusion. She distinguished between the inability to demonstrate that one would have appealed, which defeats prejudice, and the inability to demonstrate that one's appeal would have been successful, which does not defeat prejudice. *Peguero*, 526 U.S. at 30, 119 S.Ct. 961 (O'Connor, J., concurring). Justice O'Connor agreed with the majority that Peguero's

knowledge of his right to appeal and failure to request an appeal placed him in the first category and thus that he could not demonstrate prejudice. She then noted her belief that petitioners in the second category who alleged trial court error could demonstrate prejudice, and that this view was consistent with the Court's treatment of claims of ineffective assistance of counsel. *Id.* (citing *Rodriquez*, 395 U.S. at 327, 89 S.Ct. 1715). Justice O'Connor's opinion thus is consistent with a reasonable belief that, regardless of whether a petitioner alleged ineffective assistance of counsel or a violation of Rule 32(a)(2), pre-*Flores–Ortega* law barred relief to any petitioner who could not demonstrate that he would have appealed because, like Peguero, he knew of his right to appeal but never requested an appeal, but did *not* bar relief to any petitioner simply because he could not demonstrate that his appeal would have been successful.