#24865-rev&rem-RWS
**2009 SD 14**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CORNELL JOEL McBRIDE,                    Petitioner and Appellant,

  v.

DOUGLAS WEBER, Warden,
South Dakota State Penitentiary,         Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE KATHLEEN K. CALDWELL
Judge

* * * *

STEVE MILLER                             Attorney for petitioner
Sioux Falls, South Dakota                and appellant.

LAWRENCE E. LONG
Attorney General

FRANK E. GEAGHAN
Assistant Attorney General               Attorneys for respondent
Pierre, South Dakota                     and appellee.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 3, 2008

OPINION FILED 3/11/09

#24865

SABERS, Retired Justice

[¶1.]        Cornell McBride appeals the denial of habeas relief contending he received ineffective assistance of counsel based on counsel's failure to consult with him concerning the possibility of a direct appeal following his guilty plea to aggravated assault.  We reverse and remand.

FACTS

[¶2.]        McBride engaged in a pattern of domestic violence against his girlfriend.  This culminated in a vicious beating and stabbing that left her seriously injured.  McBride was indicted for aggravated assault with a dangerous weapon, aggravated assault-physical menace, three counts of simple assault, grand theft, stalking and a part II information was also filed.  Pursuant to a plea agreement, McBride entered a guilty plea to aggravated assault with a dangerous weapon.  The plea agreement was "open" and McBride was aware his sentence could be up to a maximum of fifteen years in the penitentiary.  McBride expressed concerns to his counsel about having to serve fifteen years in the penitentiary.  After discussing the plea agreement and the exposure he faced for the charges, he agreed to accept the plea agreement.  Counsel also discussed the possibility of a suspended sentence and although she indicated it was unlikely she argued for it at sentencing.  The State advocated for the maximum term of imprisonment under the plea agreement and

the circuit court sentenced McBride to fifteen years in the penitentiary. The sentencing judge did not inform McBride of his right to appeal.[1]

[¶3.]        Immediately after sentencing, McBride met with his attorney in the hallway outside the courtroom. Counsel testified that she briefly discussed the right to appeal with McBride and her notes reflected that she advised him of this right and that there were no issues for appeal. Counsel also testified that she and McBride were both emotional following the sentencing. She did not inform McBride he could challenge the sentence imposed. Counsel also never asked McBride if he wished to appeal. McBride testified that he had no recollection of any discussion concerning a right to appeal and it was his understanding that he could not appeal following a guilty plea. Both agree that the conversation following sentencing focused on seeking a reduction of sentence through a subsequent motion. The entire extent of this conversation was less than ten minutes. Thereafter, McBride sent a series of letters to counsel inquiring about having his sentence modified. Although counsel sent McBride a copy of the written judgment there were no further discussions concerning his right to appeal until thirteen months later when McBride asked counsel what he needed to do to file an appeal. This was after the motion to modify the sentence was denied.

[¶4.]        McBride filed a habeas corpus action contending he received ineffective assistance of counsel based on counsel's failure to adequately consult with him

---

1.    SDCL 23A-27-3 provides that "[t]here is no duty on a court to advise a defendant of any right of appeal after sentence is imposed following a plea of guilty."

concerning his right to a direct appeal from the sentence imposed. McBride claims he would have appealed if he had been adequately advised of that right. The habeas court found that counsel did not adequately consult with McBride concerning the appeal. That finding is not challenged on appeal. Although the habeas court found that "McBride admits he never told [counsel] he wished to appeal," the record demonstrates that counsel informed McBride he did not have any issues for appeal and counsel never asked him if he wished to appeal. McBride indicated he was not aware he had a right to appeal following his guilty plea and he provided no specific instructions to counsel concerning an appeal.

[¶5.] The habeas court found McBride had not identified an appealable issue and "that counsel was not constitutionally required to consult because [counsel] believed there were no nonfrivolous grounds for appeal." Therefore, under the circumstances and in the absence of a specific request to appeal, the habeas court determined McBride did not receive ineffective assistance of counsel. The habeas court denied relief and also a certificate of probable cause to appeal this issue. Because this Court has not previously addressed counsel's duty to consult with a client concerning the right to appeal as articulated by the United States Supreme Court in *Roe v. Flores-Ortega*, 528 US 470 (2000), this Court issued a certificate of probable cause allowing appeal in this matter.

ISSUE

[¶6.] **Whether McBride's counsel was ineffective for failing to adequately consult with him concerning his right to direct appeal.**

[¶7.] In *Flores-Ortega*, the United States Supreme Court established the paradigm for analyzing a claim of ineffective assistance of counsel based on a failure

to file a notice of appeal. 528 US at 477-487. As a starting point, the Court

recognized that "a lawyer who disregards specific instructions from the defendant to

file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at

477. "At the other end of the spectrum, a defendant who explicitly tells his attorney

*not* to file an appeal plainly cannot later complain that, by following his

instructions, his counsel performed deficiently." *Id.* As in *Flores-Ortega*, the

question presented by this case falls between these two situations.

> In those cases where the defendant neither instructs
> counsel to file an appeal nor asks that an appeal not be
> taken, we believe the question whether counsel has
> performed deficiently by not filing a notice of appeal is
> best answered by first asking a separate, but antecedent,
> question: whether counsel in fact consulted with the
> defendant about an appeal. We employ the term "consult"
> to convey a specific meaning-advising the defendant about
> the advantages and disadvantages of taking an appeal,
> and making a reasonable effort to discover the
> defendant's wishes. If counsel has consulted with the
> defendant, the question of deficient performance is easily
> answered: Counsel performs in a professionally
> unreasonable manner only by failing to follow the
> defendant's express instructions with respect to an
> appeal. If counsel has not consulted with the defendant,
> the court must in turn ask a second, and subsidiary,
> question: whether counsel's failure to consult with the
> defendant itself constitutes deficient performance. That
> question lies at the heart of this case: Under what
> circumstances does counsel have an obligation to consult
> with the defendant about an appeal?

*Id.* at 478. Further,

> We cannot say, as a *constitutional* matter, that in every
> case counsel's failure to consult with the defendant about
> an appeal is necessarily unreasonable, and therefore
> deficient. Such a holding would be inconsistent with both
> our decision in *Strickland* and common sense. For
> example, suppose that a defendant consults with counsel;
> counsel advises the defendant that a guilty plea probably

-4-

will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.

We instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 479-80 (citations omitted). Concerning a defendant's need to establish

prejudice if a duty to consult existed, the Supreme Court stated:

In some cases, however, the defendant alleges not that counsel made specific errors in the course of representation, but rather that during the judicial proceeding he was-either actually or constructively-denied the assistance of counsel altogether. "The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage." United States v. Cronic, 466 US 648, 659 (1984). The same is true on appeal. *See* Penson v. Ohio, 488 US 75, 88 (1988). Under such circumstances, "[n]o specific showing of prejudice [is] required," because "the adversary process itself [is] presumptively unreliable." *Cronic, supra,* at 659; *see also Smith v. Robbins,* 528 US 259, 286 (2000) ("denial of counsel altogether . . . warrants a presumption of prejudice"); *Penson, supra,* at 88-89 (complete denial of counsel on appeal requires a presumption of prejudice).

Today's case is unusual in that counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself. According to respondent, counsel's deficient performance deprived him of a notice of appeal and, hence, an appeal altogether. Assuming those allegations are true, counsel's deficient performance has deprived respondent of more than a *fair* judicial proceeding; that deficiency deprived respondent of the appellate proceeding altogether. In *Cronic, Penson,* and *Robbins,* we held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because "the adversary process itself" has been rendered "presumptively unreliable." *Cronic, supra,* at 659. The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice. Put simply, we cannot accord any " 'presumption of reliability,' " *Robbins,* at 286, to judicial proceedings that never took place.

*Id.* at 483. As a result, the Supreme Court held that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he

would have timely appealed." *Id.* at 484. Significantly, the Supreme Court rejected "any requirement that the would-be appellant 'specify the points he would raise were his right to appeal reinstated.'" *Id.* at 485 (quoting Rodriquez v. United States, 395 US 327, 330 (1969)). The Supreme Court stated that by not requiring a defendant to demonstrate meritorious issues to have his appeal reinstated allowed him to "be treated like any other appellant." *Id. See also* Whiteman v. State, 643 NW2d 704, 709 (ND 2002) ("[C]ourts routinely have held *Flores-Ortega* thus establishes that an indigent, perhaps pro se defendant, even if he pled guilty, cannot be required to demonstrate how his appeal would have been successful in order to establish that he was prejudiced by his attorney's failure to pursue a requested appeal.").

[¶8.] Because the habeas court found that counsel did not adequately consult with McBride concerning an appeal, the question becomes whether counsel was constitutionally deficient in failing to do so. Consult means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 US at 478. Counsel should also inform a defendant that he is obligated to file an appeal if that is what the defendant requests. Thompson v. United States, 504 F3d 1203, 1207 (11th Cir 2007).[2] "[A]dequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of

---

2. As the Supreme Court has recognized, a defendant, not his attorney, "has the ultimate authority to determine whether to . . . take an appeal." Florida v. Nixon, 543 US 175, 187 (2004).

taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." *Id.* at 1206 (citing Frazer v. South Carolina, 430 F3d 696, 711 (4th Cir 2005)).

[¶9.]        As articulated above, a duty to consult arises when "(1) a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 US at 480. "This inquiry is informed by several 'highly relevant' factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and 'whether the plea expressly . . . waived some or all appeal rights.'" Otero v. United States, 499 F3d 1267, 1270 (11th Cir 2007) (quoting *Flores-Ortega*, 528 US at 480). Other factors include the duration of the consultation, *Thompson*, 504 F3d at 1207, the content of the exchange, *see id.*, and whether the court has adequately informed a defendant of his right to appeal, *Flores-Ortega*, 528 US at 479-80.

[¶10.]       Applying the test as articulated in *Flores-Ortega,* the habeas court focused almost exclusively on the first prong: whether "a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal)." The habeas court understandably denied relief under that prong because of its objective focus on the rational defendant. McBride entered into a plea agreement by which he reduced his maximum exposure to fifteen years, the sentence that he received. This sentence should have been objectively expected as this was a vicious crime involving the beating and stabbing of a victim evolving from a pattern of

domestic violence. McBride also has not identified non-frivolous grounds for appeal. Nevertheless, that is only part of the inquiry in determining if a duty to consult existed.

[¶11.] The second prong of the *Flores-Ortega* test requires a court to alternatively determine if "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Although the habeas court found McBride did not satisfy this second prong based on its finding that he admitted he never told counsel he wished to appeal, the question is whether McBride "reasonably demonstrated" an interest in appealing thus triggering a duty to consult. McBride's failure to specifically request an appeal does not end the inquiry or foreclose relief because McBride was informed by counsel that he had no issues to appeal. Further, counsel did not inform McBride he could appeal the sentence and never asked him if he wished to appeal. As the habeas court recognized, this was not an adequate consultation allowing him to make an informed decision. Therefore, the habeas court erred in focusing on McBride's failure to specifically assert his right to appeal, a right his attorney advised was essentially unavailable and a right McBride testified he did not realize he possessed. Under these circumstances, resolving the second prong on a finding that McBride failed to request an appeal would be entirely circular and inconsistent with *Flores-Ortega*.

[¶12.] Based on the record, McBride reasonably demonstrated to counsel that he was interested in contesting (appealing) his sentence, and therefore, counsel was deficient in failing to consult with him concerning his right to appeal. It is clear that McBride expressed dissatisfaction with his sentence almost immediately.

Counsel and McBride were emotional during their brief exchange following sentencing because the sentence was more severe than expected. Rather than discussing the appeal option, counsel's discussion was limited to modifying the sentence. McBride thereafter persistently maintained contact with his attorney concerning the motion to modify and what could be done to reduce his sentence. Although it was not statutorily required, it is also relevant that McBride was not informed by the sentencing court of his right to appeal when considering counsel's duty to adequately inform him of that right and ascertain his desire concerning an appeal. Counsel did not further communicate with McBride concerning his appellate rights after the judgment had been reduced to writing;[3] the written judgment also did not contain an advisory as to the right to appeal. Under these circumstances, and based on the information counsel knew, or should have known, a duty arose to at least consult with McBride concerning his right to appeal.

[¶13.]      These facts also support the reasonable probability that McBride would have exercised his right to appeal had counsel adequately consulted with him concerning that right. *See Thompson,* 504 F3d at 1207-08 (holding defendant was not adequately consulted about his appeal rights when he expressed dissatisfaction

---

3.      When reviewing a letter counsel sent to McBride summarizing the sentencing it is the absence of an advisory of the right to appeal that stands out. That letter is broken down by topic detailing the sentence McBride received, the plea agreement, the time he was to report to custody, the fine, the court costs, the attorney fees, the restitution and discussion of the motion to modify. A copy of the judgment was included. This letter was dated a few weeks after the time to appeal had expired.

with his sentence and counsel only advised him he did not believe an appeal would be successful in a brief five minute exchange); *Frazer*, 430 F3d at 712 (affirming habeas relief based on defendant's "unwavering and ongoing" interest in challenging his sentence following his guilty plea based on his discontent with the sentence imposed). McBride has therefore sufficiently demonstrated prejudice on this record.

[¶14.] "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Flores-Ortega*, 528 US at 484. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

[¶15.] GILBERTSON, Chief Justice, ZINTER and MEIERHENRY, Justices, concur.

[¶16.] KONENKAMP, Justice, concurs specially.

KONENKAMP, Justice (concurring specially).

[¶17.] I concur with the Court's opinion and write to express a few thoughts on the process whereby a right to appeal, long expired, may be revived. This revival process, invoked only in criminal cases, must be labeled for what it is: a juridical "ruse."[4] There is no statutory provision that permits it, although by constitutional necessity it must exist.

---

4.      *See* 16A Charles Alan Wright *et al.* Federal Practice and Procedure 3950.9 (2008).

[¶18.]        South Dakota is an appeal-of-right state.  Anyone convicted of a

misdemeanor or felony, whether by trial or plea, has an absolute right to appeal the

conviction.  Appeals to the Supreme Court must be taken within thirty days.  SDCL

23A-32-15.  This time limitation is mandatory and jurisdictional:  it cannot be

waived or extended by agreement or failure to object.  Whether it is a criminal or

civil action, our appellate jurisdiction is conferred purely by the Legislature.  S.D.

Const Art. V, sec. 5.  Failure to timely appeal is a jurisdictional defect mandating

dismissal.  State v. Mulligan, 2005 SD 50, ¶5, 696 NW2d 167, 169 (citations

omitted).  South Dakota courts have no authority to grant a right of appeal that has

been lost because of non-compliance with jurisdictional requirements.

[¶19.]        How, then, in a case such as this, are courts empowered to revive a lost

right to appeal when a lawyer fails to timely perfect the appeal of a criminal

defendant's case?  Our interpretation of *Flores-Ortega* today merely provides the

standard for determining whether a defendant received ineffective assistance of

counsel depriving the defendant a right to appeal that would otherwise have been

exercised.  No statutory remedy is available in South Dakota once it is found that a

right to appeal has been lost through ineffective assistance of counsel.  Federal law,

in the view of most federal circuits, provides a remedy for this situation.  In

addition to the power of a federal judge to extend the time of appeal for "excusable

neglect or good cause," Federal Rules of Appellate Procedure Rule 4(b)(4), federal

courts have interpreted 28 USC 2255 to allow a court to "vacate" the original

sentence so that it may be reimposed and a new appeal time created.[5]  *See* United States v. Shedrick, 493 F3d 292, 303 (3dCir 2007); United States v. Garrett, 402 F3d 1262, 1266-67 (10thCir 2005); United States v. Snitz, 342 F3d 1154, 1159 (10thCir 2003); United States v. Phillips, 225 F3d 1198, 1200-01 (11thCir 2000).  After the original sentence is vacated and the same sentence reimposed, the defendant is advised of his or her right to appeal.  *Phillips*, 225 F3d at 1201.  By vacating and reimposing the original sentence, a new time limit to perfect an appeal is set.  *See* FedRAppP 4(b)(1)(A).

[¶20.]    South Dakota has no similar statute.  Perhaps it should.  Absence of legislative authority has been a long standing problem.  As this Court noted more than two decades ago in *Loop v. Solem*, "[w]e have no statutory provision for 'out-of-time' appeals."  398 NW2d 140, 144 (SD 1986).  Other states have enacted laws to allow for delayed appeals when a person has been denied the right to appeal through a constitutional violation.  *See, e.g.*, TennCodeAnn 40-30-113 (2003).[6]

---

5.    Under 28 USCA 2255, a federal court may "vacate and set the judgment aside and [] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate" if the court finds "that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack[.]"

6.    The Tennessee statute provides in relevant part:

   (a) When the trial judge conducting a hearing pursuant to this part finds that the petitioner was *denied the right to an appeal from the original conviction in violation of the Constitution of the United States or the Constitution of Tennessee* and that there is an adequate record of the original trial proceeding available for such review, the judge can:

   (1) . . . [G]rant a delayed appeal[.]

   (Emphasis added.).

(continued . . .)

-13-

Despite the absence of a statute, however, we have at least acknowledged the use of a similar remedy in our courts, albeit without authority. *See* State v. Hoeft, 1999 SD 24, ¶9, 594 NW2d 323, 325-26; State v. Williamson, 86 SD 485, 490, 198 NW2d 518, 521 (1972). In my years on the bench, I have seen this procedural device used several times to revive expired criminal appeals. Necessity requires it. Our highest duty is to the Constitution. A constitutional right to appeal one's conviction becomes a hollow pretense without the cognate constitutional right to effective assistance of counsel. When ineffective attorneys deny their clients the right to appeal in violation of the constitution, the courts must find a solution. Until our Legislature enacts a statutory remedy, therefore, we must perpetuate our juridical ruse.

[¶21.] In the meantime, in order to standardize our procedure for out-of-time appeals and provide guidance to the bench and bar on what to do after a defendant has been unconstitutionally denied the right to appeal, we should adopt an approach similar to what the federal courts and some state courts are using.[7] The remedy can be effected in a circuit court in the following way: "(1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised [of]

---

(. . . continued)

7. *See, e.g.*, Middlebrook v. State, 815 A2d 739, 743 (Del 2003).

the time for filing a notice of appeal from that re-imposed sentence[.]" *See Phillips*, 225 F3d at 1201; SDCL 23A-32-15.

[¶22.]      Whether the defendant's actual presence is required at the re-sentencing hearing remains an open question. Some courts hold that the defendant does not need to be present. *See* United States v. Parrish, 427 F3d 1345, 1347-48 (11thCir 2005). After all, the original sentencing court will simply be performing the quasi-clerical task of vacating and reimposing the same sentence. However, the Due Process Clause requires an accused to be present at all critical stages of criminal proceedings, and South Dakota law specifically requires defendants to be present at sentencing. U.S. Const. Amend. XIV; SDCL 23A-39-1. In my view, the safer procedure would be to require the defendant's presence at the re-sentencing. At the least, this would assure that appeal rights and time limits are fully explained in person and on the record.