#27500-a-LSW

**2016 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JACOB J. STARK,                                   Petitioner and Appellant,

v.

DOUGLAS WEBER, Warden of
the South Dakota State Penitentiary,              Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
DEUEL COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE VINCENT A. FOLEY
Judge

* * * *

CHERI SCHARFFENBERG of
Waltner, Kolbeck & Scharffenberg, LLP
Tea, South Dakota                                 Attorneys for petitioner
                                                  and appellant.


MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota                              Attorneys for respondent
                                                  and appellee.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 21, 2016

OPINION FILED **04/27/16**

#27500

WILBUR, Justice

[¶1.]    Jacob Stark pleaded guilty to aggravated assault against a law enforcement officer in August 2009 and was sentenced to 22 years in prison.  He did not appeal the sentence directly.  In July 2012, Stark filed a petition for writ of habeas corpus arguing he received ineffective assistance of counsel at trial and that his sentence was unconstitutional.  The circuit court denied his petition, and Stark appeals.  We affirm.

## Background

[¶2.]    In April 2009, Jacob Stark and his brothers began drinking beer after they finished working on their grandmother's farm in Deuel County, South Dakota. Stark and his brother Joe continued drinking throughout the evening and at some point began to argue.  The  argument escalated and became physical when they returned to the lodge they were staying at for the night.

[¶3.]    After Stark drove away in his pickup, Joe called law enforcement.  Joe claimed that Stark was a "homicidal maniac."  When the Sheriff's deputies arrived at the lodge, Joe told them that Stark likely returned to their grandmother's farm. Joe also told the deputies that Stark had several guns.  Joe suggested that the deputies not pursue Stark because Stark would try to kill them.  With this knowledge, the deputies traveled to the farm.

[¶4.]    At the farm, the deputies saw Stark's pickup and noticed movement inside the pickup.  The deputies moved behind a shed and closer to the pickup to get a better view.  One deputy yelled Stark's name and announced that they were law enforcement.  Stark responded by threatening to kill the officers.  He yelled that he

would "mow" and "rake" them down. Stark told the deputies to "get ready for a shootout 'cause we are gonna have a war." Stark began a countdown from ten and fired a gun when he reached one. The deputies did not return any fire. Instead, they advised dispatch that shots had been fired.

[¶5.] The deputies again attempted to talk with Stark. At one point, Stark said he knew backup was coming and stated that he would try to kill the backup officers as well. Stark also continued to fire rounds from his rifle. Eventually, he tried to escape in his pickup, but drove over spike strips that law enforcement had previously laid out. Law enforcement subdued and arrested Stark.

[¶6.] The State charged Stark with two counts of aggravated assault against a law enforcement officer, and the State also filed a part II information alleging Stark to be a habitual offender under SDCL 22-7-7. Stark agreed to plead guilty. In exchange, the State agreed to dismiss one of the aggravated assault counts and the part II information. The court stayed sentencing pending a presentence investigation and report.

[¶7.] During the presentence investigation, the court services officer interviewed Stark and asked about the evening involving the officers. Stark's attorney had previously advised Stark not to fabricate anything that he did not remember from the evening. Counsel advised Stark, "[I]f you don't remember exactly what happened, don't try to fill in the blanks . . . . [I]t is okay to tell the Court Services Officer that you don't remember exactly what happened." Stark told the court services officer that he did not remember anything after leaving the second bar with his brothers except for firing his rifle into the ground. Stark's

statements to court services were inconsistent with the statements Stark made in interviews following his arrest. The circuit court sentenced Stark to 22 years in the state penitentiary.

[¶8.] Stark petitioned the circuit court for habeas corpus relief in 2012, arguing that his counsel was ineffective at trial and that his subsequent sentence was cruel and unusual under the 8th Amendment to the United States Constitution. The circuit court held a hearing on the petition in October 2014. At the hearing, Stark called defense counsel to testify about counsel's representation of Stark at trial and about discussions they had after the sentencing hearing. Counsel testified that he told Stark's family that an appeal would likely be a waste of time and money because Stark pleaded guilty. Counsel explained that he told the family that the only issue Stark could realistically appeal was that Stark's sentence was cruel and unusual. After the hearing, the circuit court issued a memorandum decision denying habeas relief.

[¶9.] Stark appeals, arguing two issues for our review:

1.   Whether Stark received ineffective assistance of counsel regarding his right to appeal and his right to remain silent during the presentence investigation.

2.   Whether Stark's 22-year sentence was cruel and unusual.

## Standard of Review

[¶10.] A claim for habeas corpus relief is "a collateral attack on a final judgment and therefore our review is limited." *Legrand v. Weber*, 2014 S.D. 71, ¶ 10, 855 N.W.2d 121, 126 (quoting *Davis v. Weber*, 2013 S.D. 88, ¶ 9, 841 N.W.2d 244, 246). "Habeas Corpus can only be used to review (1) whether the court had

jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights." *Id.* (quoting *Davis*, 2013 S.D. 88, ¶ 9, 841 N.W.2d at 246). "We review findings of fact under the clearly erroneous standard, while we give no deference to conclusions of law and thereby apply the de novo standard." *Id.* (quoting *Erickson v. Weber*, 2008 S.D. 30, ¶ 17, 748 N.W.2d 739, 744). Our review for ineffective assistance of counsel is a mixed question of law and fact. *Fast Horse v. Weber*, 2013 S.D. 74, ¶ 10, 838 N.W.2d 831, 836.

## Decision

### 1.    Ineffective Assistance of Counsel

[¶11.]        Stark alleges two separate instances of ineffective assistance of counsel. He asserts that counsel failed to adequately consult with Stark regarding his right to appeal and that counsel failed to advise Stark not to speak to court services during the presentence investigation. "To prevail 'on a claim of ineffective assistance of counsel, a defendant must show that his counsel provided ineffective assistance and that he was prejudiced as a result.'" *State v. Hannemann*, 2012 S.D. 79, ¶ 11, 823 N.W.2d 357, 360 (quoting *State v. Thomas*, 2011 S.D. 15, ¶ 21, 796 N.W.2d 706, 713). The defendant must demonstrate that the representation fell below an "objective standard of reasonableness." *Fast Horse*, 2013 S.D. 74, ¶¶ 14-15, 838 N.W.2d at 836 (quoting *Hannemann*, 2012 S.D. 79, ¶ 11, 823 N.W.2d at 360). "The question is whether counsel's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (quoting *Hannemann*, 2012 S.D. 79,

¶ 11, 823 N.W.2d at 360). We strongly presume that "counsel's performance falls within the wide range of professional assistance and the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential." *Boyles v. Weber*, 2004 S.D. 31, ¶ 27, 677 N.W.2d 531, 540 (quoting *Siers v. Class*, 1998 S.D. 77, ¶ 12, 581 N.W.2d 491, 495). "[T]he defendant must rebut the strong presumption that the counsel's performance was competent." *Steichen v. Weber*, 2009 S.D. 4, ¶ 25, 760 N.W.2d 381, 392.

### A. Ineffective assistance regarding right to appeal

[¶12.]    "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *McBride v. Weber*, 2009 S.D. 14, ¶ 7, 763 N.W.2d 527, 529 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S. Ct. 1029, 1035, 145 L. Ed. 2d 985 (2000)). Counsel must consult with counsel's client about the defendant's right to appeal if there is reason to believe either that a "rational defendant would want to appeal . . . [or] that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480, 120 S. Ct. at 1036.

[¶13.]    Stark compares his case to our decision in *Mcbride,* 2009 S.D. 14, ¶ 3, 763 N.W.2d at 529. In that case, defendant and defense counsel discussed reducing defendant's sentence through a subsequent motion. *Id.* But counsel did not discuss defendant's right to appeal the sentence at all, and the defendant did not tell counsel that he wished to appeal. *Id.* ¶ 4. Here, however, Stark and his counsel discussed Stark's right to appeal. Stark's family stated that they wanted to appeal.

Counsel responded that an appeal would likely be unsuccessful. Counsel explained that Stark's guilty plea likely limited review on appeal to one issue—whether the sentence was cruel and unusual.

[¶14.]     The circuit court found counsel credible when he testified that he consulted with Stark about Stark's right to appeal and the likelihood of success. The court also found that Stark did not ask to appeal in light of this conversation. From our review of the record, counsel fulfilled his obligation to consult with his client about his client's appeal options. Indeed, "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea . . . because a guilty plea reduces the scope of potentially appealable issues[.]" *Flores-Ortega*, 528 U.S. at 480, 120 S. Ct. at 1036. Counsel's conduct did not fall below an objective standard of reasonableness, and Stark did not receive ineffective assistance of counsel as to this issue.

### B. Ineffective Assistance during presentence investigation

[¶15.]     Stark next argues that counsel was ineffective because counsel did not advise Stark to exercise his right against self-incrimination and to remain silent. Stark argues that "there is absolutely zero tactical or strategic reason to allow Stark to be interviewed at all about his version of the offense." In Stark's view, the fact that he gave a different version of the events in his interview with court services as compared to law enforcement led the circuit court to sentence him more harshly.

[¶16.]     From our review of the record, counsel advised Stark to cooperate fully with court services and to be truthful if he did not remember details of the crime. Counsel's advice does not constitute unreasonable behavior for an attorney. This is

especially true considering the strong presumption that counsel's performance was competent.  Stark has not shown that he received ineffective assistance of counsel in the presentence investigation.

### 2.	Cruel and Unusual Punishment

[¶17.]	Stark asks this Court to reverse his conviction and remand for further proceedings because his sentence of 22 years in prison is cruel and unusual in violation of the Eighth Amendment.  U.S. Const. amend. VIII.*  When examining a noncapital sentence for potential violations of the Eighth Amendment, we examine whether the sentence is "grossly disproportionate to its corresponding offense." *State v. Rice*, 2016 S.D. 18, ¶ 13, ___ N.W.2d ___, ___.  When examining for proportionality, we compare the gravity of the offense on the spectrum of all criminality to the harshness of the penalty on the spectrum of all permitted punishments.  *State v. Chipps*, 2016 S.D. 8, ¶¶ 35-37, 874 N.W.2d 475, 487-88.

[¶18.]	We thus first examine the gravity of Stark's offense.  Stark was convicted of two counts of aggravated assault against law enforcement officers: a violent crime that is exacerbated by being perpetrated against law enforcement officers.  While not the gravest of offenses, it is nonetheless very serious.  The punishment he received, on the other hand, is 22 years in prison.  While a 22-year

---

*	Stark raised the Eighth Amendment issue for the first time in this habeas action, as he did not directly appeal his sentence.  "[W]e have long held that 'habeas corpus cannot be utilized as a substitute for an appeal . . . .'" *McDonough v. Weber*, 2015 S.D. 1, ¶ 18, 859 N.W.2d 26, 35 (quoting *State ex rel. Smith v. Jameson*, 70 S.D. 503, 507, 19 N.W.2d 505, 507 (1945)).  Neither party briefed whether he may assert an Eighth Amendment violation untethered to an ineffective assistance of counsel argument for the first time in a habeas petition.

sentence is not insubstantial, it is substantially less than the most severe punishments permitted by law and is not unduly harsh in light of Stark's offense.

## Conclusion

[¶19.] The circuit court did not err when it denied Stark habeas corpus relief. Stark's counsel was not ineffective, and Stark's sentence is not unconstitutionally cruel and unusual.

[¶20.] Affirmed.

[¶21.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.